IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Mark R. KRAMER, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Mark R. KRAMER, Respondent.

Supreme Court

*No. 2009AP3177–D.—Decided October 6, 2010.*

2010 WI 118

(Also reported in 789 N.W.2d 322.)

¶ 1. PER CURIAM. We review the report and recommendation of the referee, Attorney Kim M. Peterson, that Attorney Mark R. Kramer's license to practice law in Wisconsin be revoked, that he be required to pay restitution to various clients and the Wisconsin Lawyers' Fund for Client Protection (the Fund), and that he be required to pay the costs of this disciplinary proceeding, which were $893.23 as of May 20, 2010.

¶ 2. After fully reviewing the matter, we agree that Attorney Kramer committed numerous acts of professional misconduct, as alleged in the 69 counts of the complaint filed by the Office of Lawyer Regulation (OLR), and that Attorney Kramer's license to practice law in this state must be revoked. We further order that

Attorney Kramer make restitution payments as outlined below and that he pay the full costs of this disciplinary proceeding.

¶ 3. Attorney Kramer was admitted to the practice of law in Wisconsin in May 1986. He maintained a private law practice in Waukesha County. Prior to the investigations that led to the current disciplinary proceeding, Attorney Kramer had not been the subject of professional discipline. On October 20, 2008, however, this court suspended his license to practice law in this state due to his willful failure to cooperate with two OLR grievance investigations. *See* SCR 22.03(4). His license has remained suspended until the present date.

¶ 4. The OLR personally served its formal complaint on Attorney Kramer on January 19, 2010. On February 24, 2010, after Attorney Kramer had not filed an answer or other response to the complaint, the OLR filed a motion for the entry of a default against him. Attorney Kramer was given four weeks from the filing of the motion to respond, but he failed to do so.

¶ 5. Having heard nothing from Attorney Kramer, the referee granted the default requested by the OLR. The referee therefore accepted all of the factual averments in the complaint as established and concluded that those facts supported the 69 counts of professional misconduct asserted by the OLR. The referee strongly recommended that Attorney Kramer's license be revoked, stating that Attorney Kramer had "acted in a despicable and deceitful manner," "had not cooperated with the OLR in this investigation," had "provided no explanation for his conduct," and had not "made any effort to mitigate the effects of his conduct." The referee also recommended that "all costs associated with this matter, and detailed in the OLR's complaint should be assessed against" Attorney Kramer. Although the report

363

used the term "costs," we interpret this recommendation to mean that Attorney Kramer should be ordered to pay restitution to the individuals and entities and in the amounts specified in the OLR's complaint because the complaint did not "detail" any costs.

¶ 6. Because of the voluminous nature of the allegations against Attorney Kramer, we will not repeat all of the referee's factual findings and legal conclusions here. We will provide some summary information and a representative example of Attorney Kramer's misconduct.

¶ 7. It is sufficient to note that Attorney Kramer engaged in 69 separate acts of misconduct in 16 separate client representations, in his response to an inquiry from the Internal Revenue Service (IRS), and in the management of his client trust account. Thirteen of the counts involved Attorney Kramer's conversion of funds belonging to clients or third parties that he should have been holding in trust. *See* SCRs 20:8.4(b),[1] 20:8.4(c),[2] and 20:1.15(b)(1).[3] The total

---

[1] SCR 20:8.4(b) states it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . ."

[2] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[3] SCR 20:1.15(b)(1) states:

> Separate account. A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

amount converted appears to be in excess of $150,000.[4] Eight counts involved Attorney Kramer making affirmative false statements to clients or others, and one count involved dishonest conduct in using his client trust account to conceal assets from the IRS. *See* SCR 20:8.4(c). Thirteen counts involved Attorney Kramer's failure to notify his clients of certain events (e.g., the settlement of their claims or the temporary suspension of his license to practice law in Wisconsin) or to communicate with his clients regarding the status of their matters. *See* former SCR 20:1.4(a)[5] and current SCRs 20:1.4(a)(3),[6] 20:1.4(b),[7] 20:1.15(d)(1),[8] and 22.26(1)(a)

[4] The total of the various conversion amounts set forth in the OLR's complaint is $169,006.19, but that total could be lessened because in some instances Attorney Kramer may have lawfully been able to recoup certain expenses that he had incurred while pursuing lawsuits on behalf of his clients. Because Attorney Kramer refused to cooperate with the OLR's investigation or to participate in this disciplinary proceeding, the amounts of those expenses are unknown.

[5] Former SCR 20:1.4(a) (effective through June 30, 2007) provided, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[6] SCR 20:1.4(a)(3) provides a lawyer shall "keep the client reasonably informed about the status of the matter; . . . ."

[7] SCR 20:1.4(b) states, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[8] SCR 20:1.15(d)(1) provides:

> Notice and disbursement. Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the

365

and (b).[9] Finally, fifteen of the counts related to Attorney Kramer's failure to respond to the OLR's inquiries regarding grievances received from clients and Attorney Kramer's conduct. *See* SCRs 22.03(2) and (6).[10]

¶ 8. One representation provides an illustrative example of Attorney Kramer's misconduct. Attorney Kramer was retained to represent J.H. and his wife

lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[9] SCRs 22.26(1)(a) and (b) state:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

[10] SCRs 22.03(2) and (6) provide as follows:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

regarding an accident. After settling the claim, Attorney Kramer deposited the settlement proceeds of $100,000 into his client trust account. He did not, however, disburse any of the settlement proceeds to the clients. Instead, Attorney Kramer told J.H. and his wife that he would have to hold the settlement funds in trust pending resolution of an under-insured motorist claim, but he never pursued any such claim. He did, however, disburse $99,902.40 from those settlement funds out of his trust account. Some of the funds were disbursed to Attorney Kramer's law firm for its fees and costs, some were disbursed to Attorney Kramer personally, some were disbursed to another client, and some were disbursed to a law firm where Attorney Kramer had previously practiced. Although after deduction of the proper amount of fees and costs J.H. and his wife were entitled to receive $65,667 from the settlement proceeds, none of the settlement proceeds were ever disbursed to them. This pattern of accepting settlement proceeds or other client funds and then converting them to Attorney Kramer's personal uses was repeated in a number of representations.

■■■

¶ 9. Because no appeal was filed from the referee's report and recommendation, our review proceeds pursuant to SCR 22.17(2).[11] When reviewing a report and recommendation in an attorney disciplinary proceeding, we affirm a referee's findings of fact unless they are

---

[11] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

found to be clearly erroneous. *In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We review the referee's conclusions of law, however, on a de novo basis. Id. Finally, we determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 10. Given Attorney Kramer's default, we accept the referee's findings of fact. We also agree with the referee that the facts set forth in the complaint support the legal conclusion that Attorney Kramer engaged in 69 counts of professional misconduct.

■

¶ 11. It is clear that Attorney Kramer's professional misconduct requires the severest level of discipline that we impose, namely, the revocation of his license to practice law in Wisconsin. Attorney Kramer engaged in a pattern of lying to and stealing from his clients and third parties. Moreover, when confronted with his misconduct, he consistently failed to respond to the OLR's investigations or to accept responsibility for his actions. By his deceitful and dishonest conduct, he has forfeited the privilege of practicing law in this state.

¶ 12. Because this case presents no extraordinary circumstances, we further determine that Attorney Kramer should be required to pay the full costs of this matter. *See* SCR 22.24(1m) (supreme court's general policy upon a finding of misconduct is to impose all costs upon the respondent attorney).

¶ 13. Finally, we turn to the issue of restitution. The OLR's complaint sought restitution in specific amounts for sums that the Fund paid to certain injured

clients and for other sums that Attorney Kramer converted from other specified clients. Attorney Kramer had multiple opportunities to object to the restitution amounts before both the referee and this court. He has not contested the allegations that he converted the specified sums nor has he alleged that restitution is improper. Consequently, we determine that Attorney Kramer should be ordered to pay restitution to the individuals/entities and in the amounts set forth in the OLR's complaint.

¶ 14. IT IS ORDERED that the license of Mark R. Kramer to practice law in Wisconsin is revoked, effective as of the date of this order.

¶ 15. IT IS FURTHER ORDERED that within 180 days of the date of this order Mark R. Kramer shall pay restitution in the following amounts to the following individuals/entities:

- $37,589 to the Wisconsin Lawyers Fund for Client Protection ($22,784 regarding client J.G.; $4,000 regarding client H.B.; $5,280 regarding client L.H.; $4,000 regarding client J.E.; $1,000 regarding client B.A.; and $525 regarding clients J.S. and J.S.);

- $65,667 to client J.H.;

- $12,741.94 to client K.B.;

- $4,500.25 to client A.F. & E.;

- $2,000 to client H.B.; and

- $3,943.78 to client S.M.

¶ 16. IT IS FURTHER ORDERED that within 180 days of the date of this order, Mark R. Kramer shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 17. IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶ 18. IT IS FURTHER ORDERED that to the extent he has not already done so, Mark R. Kramer shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.