# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1748-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Craig A. Knapp, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>　　　　　Complainant,<br>　　v.<br>Craig A. Knapp,<br>　　　　　Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST KNAPP

| | |
|---|---|
| OPINION FILED: | February 25, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| 　COURT: | |
| 　COUNTY: | |
| 　JUDGE: | |

JUSTICES:

Per Curiam. ZIEGLER, J. concurs, joined by REBECCA GRASSL BRADLEY, DALLET, HAGEDORN, and KAROFSKY, JJ.

NOT PARTICIPATING:

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP1748-D

STATE OF WISCONSIN      :      IN SUPREME COURT

---

**In the Matter of Disciplinary Proceedings Against Craig A. Knapp, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant,**

    **v.**

**Craig A. Knapp,**

        **Respondent.**

**FILED**

**FEB 25, 2021**

Sheila T. Reiff
Clerk of Supreme Court

---

ATTORNEY disciplinary proceeding. *Attorney's license revoked*.

¶1 PER CURIAM. We review the recommendation of Referee Robert E. Kinney that the license of Craig A. Knapp to practice law in Wisconsin be revoked due to professional misconduct. The referee also recommends that Attorney Knapp be ordered to pay restitution and the full costs of this proceeding. The referee's recommendation is based on a stipulation entered into between Attorney Knapp and the Office of Lawyer Regulation (OLR).

¶2 We adopt the referee's findings of fact and conclusions of law and agree that the seriousness of Attorney Knapp's professional misconduct warrants the revocation of his law license. We further agree that he should pay restitution and that he should pay the full costs of this proceeding, which are $5,786.79 as of September 29, 2020.

¶3 Attorney Knapp was admitted to practice law in Wisconsin in 1989 and practiced in Wausau. In 1991 Attorney Knapp received a consensual private reprimand for a conflict of interest violation. Private Reprimand No. 1991-31 (electronic copy available at https://compendium.wicourts.gov/app/raw/000053.html).

¶4 Attorney Knapp's law license is currently suspended for failure to pay State Bar of Wisconsin dues and failure to comply with continuing legal education requirements.

¶5 On September 17, 2019, the OLR filed a complaint alleging that Attorney Knapp committed nine counts of professional misconduct. Attorney Knapp filed an answer to the complaint on November 15, 2019. On March 16, 2020, the parties entered into a partial stipulation. On July 30, 2020, the parties filed a comprehensive stipulation in which Attorney Knapp pled no contest to all nine counts of misconduct alleged in the OLR's complaint, agreed to the revocation of his law license, and agreed to make restitution to his client. The following facts are taken from the stipulation.

¶6 In January 2017, T.B. hired Attorney Knapp to represent T.B. and his company, LJB Services, LLC, in a matter

2

involving Stone Ridge Meat & Country Market, Inc., and D&K Land Development, LTD. T.B. is the sole member of LJB Services.

¶7 On January 4, 2017, Attorney Knapp sent a letter to Attorney Thomas Lorenson, counsel for Stone Ridge, in which he said he would accept service of any legal process for LJB Services as well as the delivery of any dividend checks. On September 11, 2017, acting on behalf of Stone Ridge, Attorney Lorenson sent Attorney Knapp a dividend check payable to LJB Services and Attorney Knapp in the amount of $28,526.25.

¶8 On September 15, 2017, Attorney Knapp deposited the check in his client trust account at the River Valley Bank in Wausau, Wisconsin. On September 28, 2017, Attorney Knapp issued a trust account check payable to T.B. in the amount of $23,608. This should have left a balance of $4,918.25 attributable to LJB Services in Attorney Knapp's trust account. In fact, the balance in the trust account after the check was presented was $67.03.

¶9 On October 4, 2017, Attorney Knapp deposited three more checks payable to T.B. and LJB Services, totaling $7,987.35, into the trust account. The balance in to the trust account after making this deposit should have been $12,905.60 when in fact it was only $7,054.38.

¶10 In a letter dated November 6, 2017, Attorney Knapp provided an account summary to T.B. showing that he was currently holding $12,905.60 in his trust account for T.B. Attorney Knapp's representation was false because the balance in the trust account for T.B. as of November 6, 2017 was $5,921.28.

3

¶11 On December 29, 2017, without having made any other disbursements on behalf of T.B., the balance in Attorney Knapp's trust account was $11.03.

¶12 On January 26, 2018, Attorney Knapp deposited a check payable to T.B. and LJB Services in the amount of $20,538.90 into his trust account. After that deposit, there should have been $33,444.50 of T.B.'s funds in Attorney Knapp's trust account when in fact only $20,549.93 of T.B.'s funds were in the trust account.

¶13 On February 8, 2018, the Internal Revenue Service (IRS) sent Attorney Knapp a Notice of Levy on Wages, Salary and Other Income relating to T.B. in the amount of $63,035.74. On that same date, the IRS sent a similar Notice of Levy to River Valley Bank for taxpayer DFK Chartered, Attorney Knapp's law firm, also in the amount of $63,035.74. The Notice of Levy directed the bank to hold funds in the taxpayer's account for 21 days before it sent the money to the IRS. The 21 day period would have ended on March 1, 2018. As of March 1, 2018, the balance in Attorney Knapp's trust account was $553.63. River Valley Bank did not disburse any funds to the IRS from Attorney Knapp's trust account.

¶14 On February 14, 2018, Attorney Knapp authorized five electronic ACH payments from his trust account to the IRS totaling $16,302.40. The five transactions either had to be initiated by Attorney Knapp or authorized by him in advance.

¶15 On February 22, 2018, Attorney Knapp's trust account became overdrawn and had a negative balance of $1,383.90. As of

4

that date, Attorney Knapp failed to hold in trust, and converted for other purposes, all $33,444.50 that he should have be holding in his trust account on behalf of T.B.

¶16 On February 26, 2018, a trust account check in the amount of $2,881.43 payable to the IRS, issued by Attorney Knapp on February 12, 2018, was presented for payment, causing an overdraft of $1,851.90 in the trust account.

¶17 On March 7, 2018, T.B. emailed Attorney Knapp asking for the amount he was holding in his trust account for LJB Services. On March 11, 2018, Attorney Knapp emailed T.B. back and falsely advised the amount was $33,444.50, when in fact, the balance in the trust account on that date was $553.63.

¶18 On March 12, 2018, T.B. emailed Attorney Knapp stating he would like to pick up a check from Attorney Knapp's office. On March 13, 2018, Attorney Knapp emailed T.B. and advised he would be out of the office but asked for the amount that T.B. needed and said he would mail the check to him. T.B. replied by asking if Attorney Knapp could leave a check in the amount of $24,873 for him in an envelope at the office so T.B. could pick it up. Attorney Knapp responded by email the same day, saying "[h]old off til we can talk to you about an irrevocable trust." T.B. responded by email that if Attorney Knapp did not have time to do the trust in the next 30 days, he would need to pick up the check the following day. Attorney Knapp emailed back saying he was on his way to the Twin Cities and would get back to T.B. the following week with a date they could meet. Attorney Knapp and T.B. scheduled a meeting for May 1, 2018 at Attorney Knapp's

5

office. T.B. drove to Attorney Knapp's office on May 1, 2018 for the meeting, but Attorney Knapp did not show up.

¶19 On May 9, 2018, T.B. sent a letter to Attorney Knapp telling him to send a check for all of the cash he was holding for LJB Services in the trust account as well as any bill for services. Attorney Knapp failed to send the check. On May 17, 2018, T.B. emailed Attorney Knapp requesting a check for the balance of his funds. On May 21, 2018, Attorney Knapp emailed T.B. back saying he would check the account and forward the check to T.B. On May 30, 2018, T.B. emailed Attorney Knapp asking why he had not yet received the check.

¶20 On May 31, 2018, Attorney Knapp emailed T.B. saying that he had mailed the check the previous week and that there might be a delay due to Memorial Day. Attorney Knapp also said he would "check with the post office and put a trace on it." T.B. never received a check for the balance of his trust account funds.

¶21 On June 6, 2018, T.B. again emailed Attorney Knapp and made a final request for the entire balance of $33,444.50 of his funds in Attorney Knapp's trust account. Also in June 2018, T.B. sent a certified letter to Attorney Knapp requesting the return of his funds. Attorney Knapp's staff signed for the letter, but Attorney Knapp did not respond to either the email or the certified letter.

¶22 On June 19, 2018, T.B. confronted Attorney Knapp at a bar near Attorney Knapp's office and requested the money. T.B. emailed Attorney Knapp later that day saying he expected a check

6

for the full amount in the trust account for LJB Services by June 22, 2018.

¶23 On June 29, 2018, T.B. signed a resolution on behalf of LJB Services terminating Attorney Knapp's representation and calling for the return of all funds and property held by Attorney Knapp.

¶24 On July 5, 2018, Attorney Alan Panek sent Attorney Knapp a letter advising that he represented T.B. and LJB Services; that Attorney Knapp's representation had been terminated; and that Attorney Knapp was to provide an accounting, full payment of client funds, and the client's file. The letter was personally served on Attorney Knapp, but he did not respond.

¶25 On July 17, 2018, Attorney Panek telephoned Attorney Knapp and left a message asking why Attorney Knapp had not responded to the July 5, 2018 letter. On July 17, 2018, Attorney Panek filed a grievance against Attorney Knapp with the OLR.

¶26 On July 17, 2018, Attorney Knapp sent a letter to T.B. falsely saying that the $33,444.50 which he had in his trust account for LJB Services had been seized by the IRS. He claimed the IRS executed a levy on his trust account for an IRS lien against T.B. personally. In a letter dated August 29, 2018 to the OLR intake staff, Attorney Knapp stated:

> On February 12, 2018, the IRS executed a levy on my trust account against money held for [T.B.] of LJB Services. The IRS took the $33,444.50 and applied it to [T.B.'s] tax liability. I do not know how they

7

found out about our relationship, but assume it was through DFI records. I informed [T.B.] of this loss, but he accused me of stealing it.

¶27 Attorney Knapp's statements to the OLR about the IRS seizure of funds were false.

¶28 Attorney Knapp's practice was primarily devoted to tax preparation, and his work was usually completed before he billed his clients and collected funds.

¶29 Between September 2017 and January 2019, River Valley Bank records reflect that Attorney Knapp deposited earned fees from 20 checks totaling $7,990 into his trust account. The bank records did not show disbursement from the trust account in the same or similar amounts as the deposits, indicating that Attorney Knapp deposited earned fees to his trust account and held them there.

¶30 Between September 2017 and January 2019, River Valley Bank records reflect that Attorney Knapp made disbursements to himself, his law firm, or his employee totaling $16,900.65. Attorney Knapp did not include any notations of applicable client matters on these trust account checks. The amount of the disbursements exceeded the amount of earned fees that he deposited to the trust account by $8,910.65. Because Attorney Knapp did not have sufficient earned fees in the trust account to cover the disbursements, he converted other third-party funds in order to make these payments.

¶31 Between September 2017 and January 2019, Attorney Knapp also made disbursements to other third parties not identifiable to any client matter totaling $22,515.68. Between

8

September 2017 and January 2019, Attorney Knapp made 15 electronic disbursements from his trust account totaling $18,352.93.

¶32 Between August 2018 and February 2019, River Valley Bank records reflect that Attorney Knapp had a number of overdrafts on his trust account and was charged multiple overdraft fees.

¶33 On January 4, 2019, Attorney Knapp made a $100 cash withdrawal from his trust account.

¶34 On July 25, 2012, Attorney Knapp was arrested for operating a motor vehicle while intoxicated in Marathon County, Wisconsin.  He was charged with misdemeanor operating a motor vehicle while intoxicated (OWI), fourth offense

¶35 On December 18, 2012, Attorney Knapp pled no contest and was found guilty and convicted of OWI, fourth offense.  The court revoked his driver's license; ordered an AODA assessment, installation of an ignition interlock device, payment of a fine, and participation in the Safe Streets Treatment Options Program. The court also sentenced Attorney Knapp to 18-months probation with 60 days in jail.  The court then imposed 30 days in jail with Huber privileges and stayed 30 days.  Attorney Knapp failed to notify the clerk of this court or the OLR of the conviction.

¶36 The OLR's complaint alleged the following counts of misconduct:

**Count 1:** Upon receiving funds for T.B. and LJB Services, by failing to deliver those funds to T.B., Attorney Knapp violated SCR 20:1.15(e)(1).[1]

**Count 2:** By failing to hold in trust funds belonging to T.B. and LJB Services, Attorney Knapp violated SCR 20:1.15(b)(1).[2]

**Count 3:** By failing to fully and accurately respond to T.B.'s requests for an accounting and information concerning the status of funds received on behalf of T.B. and LJB Services, Attorney Knapp violated SCR 20:1.4(a)(4).[3]

**Count 4:** By converting funds belonging to T.B. and LJB Services; by providing false information to T.B. concerning amounts held in his trust account of behalf

---

[1] SCR 20:1.15(e)(1) provides:

Upon receiving funds or other property in which a client has an interest, or in which a lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[2] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[3] SCR 20:1.4(a)(4) provides: "A lawyer shall promptly comply with reasonable requests by the client for information."

of T.B. and LJB Services; by misrepresenting to T.B. and Attorney Panek the amount of funds he had been holding on behalf of T.B. and LJB Services and that the funds had been sized via execution of an IRS levy on his trust account; and by misrepresenting to the OLR intake staff the amount of funds he had been holding on behalf of T.B. and LJB Services and that all of the funds had been seized via execution of an IRS levy on his trust account Attorney Knapp, in each instance, violated SCR 20:8.4(c).[4]

**Count 5:** By depositing earned fees into his trust account, Attorney Knapp violated SCR 20:1.15(b)(3).[5]

**Count 6:** By making 15 electronic disbursements from his trust account totaling $18,352.93 between September 2017 and January 2019, Attorney Knapp violated SCR 20:1.15(f)(3).[6]

---

[4] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] SCR 20:1.15(b)(3) provides:

No funds belonging to a lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account. Each lawyer or law firm that receives trust funds shall maintain at least one draft account, other than the trust account, for funds received and disbursed other than in a trust capacity, which shall be entitled "Business Account," "Office Account," "Operating Account," or words of similar import.

[6] 20:1.15(f)(3) provides: "A lawyer shall not make deposits to or disbursements from a trust account by way of an electronic transaction, except as provided in SCR 20:1.15(f)(3)a. through c."

11

**Count 7:** By making a $100 cash withdrawal from his trust account, Attorney Knapp violated SCR 20:1.15(f)(2)a.[7]

**Count 8:** By engaging in conduct leading to his conviction of OWI, fourth offense, Attorney Knapp violated SCR 20:8.4(b).[8]

**Count 9:** By failing to notify the OLR and the clerk of the supreme court of his OWI fourth conviction, Attorney Knapp violated SCR 21.15(5),[9] enforceable via SCR 20:8.4(f).

¶37 In the stipulation, Attorney Knapp agreed that the facts alleged in the OLR's complaint formed the basis for the discipline sought by the OLR, which was the revocation of Attorney Knapp's Wisconsin law license. In the stipulation, Attorney Knapp represented that he full understands the

---

[7] SCR 20:1.15(f)(2)a. provides: "No withdrawal of cash shall be made from a trust account or from a deposit to a trust account. No check shall be made payable to "Cash." No withdrawal shall be made from a trust account by automated teller or cash dispensing machine."

[8] SCR 20:8.4(b) provides: "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

[9] SCR 21.15(5) provides:

An attorney found guilty or convicted of any crime on or after July 1, 2002, shall notify in writing the office of lawyer regulation and the clerk of the Supreme Court within 5 days after the finding or conviction, whichever first occurs. The notice shall include the identity of the attorney, the date of finding or conviction, the offenses, and the jurisdiction. An attorney's failure to notify the office of lawyer regulation and clerk of the supreme court of being found guilty or his or her conviction is misconduct.

12

allegations; fully understands the ramifications should the court impose the stipulated level of discipline; fully understands his right to contest the matter; fully understands his right to consult with counsel; states that his entry into the stipulation is made knowingly and voluntarily; states that he has read the complaint and the stipulation; and that his entry into the stipulation represents his decision not to contest the allegations in the complaint or the level and type of discipline sought by the OLR's director. The parties agree that an appropriate level of discipline to impose in response to Attorney Knapp's misconduct is the revocation of Attorney Knapp's license to practice law in Wisconsin and an order requiring him to pay $33,444.50 restitution to LJB Services.

¶38 On August 10, 2020, an in-person plea hearing was held at which the referee accepted Attorney Knapp's written pleas and found that a factual basis existed for all charges. In addition, the referee determined that Attorney Knapp committed all nine counts of misconduct as set forth in the OLR's complaint and stipulation.

¶39 The referee issued his report and recommendation on September 8, 2020. The referee adopted the findings of fact contained in the parties' stipulation. The referee found that the OLR had met its burden of proof as to all of the counts of misconduct alleged in the complaint. The referee found that revocation of Attorney Knapp's license was an appropriate sanction for the misconduct. The referee said Attorney Knapp's conduct was motivated by dishonesty and selfishness, and his

conversion of over $33,000 of his client's money was obviously injurious to the client. The referee noted that Attorney Knapp had considerable experience in the practice of law and obviously knew that what he was doing was wrong. The referee said, "[h]is obfuscation and avoidance behavior were clear evidence of consciousness of guilt." The referee went on to say that Attorney Knapp "initially embarked upon a course of attempting to mislead the OLR" and it took extensive discovery on the part of the OLR before Attorney Knapp "faced up to the full extent of his wrongdoing." The referee also agreed that Attorney Knapp should make restitution to LJB Services in the amount of $33,444.50 and that he should pay the full costs of this proceeding.

¶40 We will affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review a referee's conclusions of law de novo. See In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶41 Based upon our review of the record, we approve and adopt the referee's findings of fact and conclusions of law. We agree that the seriousness of Attorney Knapp's misconduct warrants the revocation of his license to practice law. Attorney Knapp engaged in a widespread pattern of serious professional misconduct that has harmed his clients and

14

tarnished the legal profession. Our precedent clearly supports the revocation of his law license. See, e.g., In re Disciplinary Proceedings Against Gedlen, 2007 WI 121, 305 Wis. 2d 34, 739 N.W.2d 274 (attorney's license revoked based on 28 counts of misconduct which included conversion of client funds and multiple trust account violations); In re Disciplinary Proceedings Against Kramer, 2010 WI 118, 329 Wis. 2d 361, 789 N.W.2d 322 (attorney's license revoked based on 69 counts of misconduct which included conversion of funds from clients and third parties and use of a trust account to conceal assets from the Internal Revenue Service). We also agree with and adopt the referee's recommendation that Attorney Knapp be ordered to pay restitution and the full costs of this proceeding.

¶42 IT IS ORDERED that the license of Craig A. Knapp to practice law in Wisconsin is revoked, effective as of the date of this order.

¶43 IT IS FURTHER ORDERED that within 60 days of the date of this order, Craig A. Knapp shall pay $33,444.50 restitution to LJB Services.

¶44 IT IS FURTHER ORDERED that within 60 days of the date of this order, Craig A. Knapp shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $5,786.79.

¶45 IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶46 IT IS FURTHER ORDERED that the administrative suspension of Craig A. Knapp's license to practice law in

Wisconsin, due to his failure to pay mandatory bar dues and for noncompliance with continuing legal education requirements, will remain in effect until each reason for the administrative suspension has been rectified pursuant to SCR 22.28(1).

¶47 IT IS FURTHER ORDERED that Craig A. Knapp shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶48 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I concur in the court's order revoking Attorney Knapp's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for readmittance after a period of five years. See SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. See In re Disciplinary Proceedings Against Moodie, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶49 I am authorized to state that Justices REBECCA GRASSL BRADLEY, REBECCA FRANK DALLET, BRIAN HAGEDORN, and JILL J. KAROFSKY join this concurrence.

1