# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2022AP1124-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against William E. Fenger, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>          Complainant,<br>     v.<br>William E. Fenger,<br>          Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST FENGER

| | |
|---|---|
| OPINION FILED: | January 25, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|    COURT: | |
|    COUNTY: | |
|    JUDGE: | |

JUSTICES:

Per curiam. ZIEGLER, C.J., filed a concurring opinion in which REBECCA GRASSL BRADLEY and HAGEDORN, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2022AP1124-D

STATE OF WISCONSIN            :         IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against William E. Fenger, Attorney at Law:**

**Office of Lawyer Regulation,**

       **Complainant,**

    **v.**

**William E. Fenger,**

       **Respondent.**

**FILED**

**JAN 25, 2023**

Sheila T. Reiff
Clerk of Supreme Court

---

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. Attorney William E. Fenger filed a petition for the consensual revocation of his license to practice law in Wisconsin pursuant to Supreme Court Rule (SCR) 22.19.[1] In his petition, Attorney Fenger states that he cannot

---

[1] SCR 22.19 provides:

     (1) An attorney who is the subject of an investigation for possible misconduct or the respondent in a proceeding may file with the supreme court a

                                     (continued)

successfully defend against multiple allegations of misconduct in connection with a grievance investigated by the Office of Lawyer Regulation (OLR). The referee appointed in this matter, the Honorable Jean A. DiMotto, recommends that this court grant Attorney Fenger's petition for consensual license revocation.

¶2 Attorney Fenger was admitted to practice law in Wisconsin in 1974. His license is currently suspended for

---

petition for the revocation by consent [of] his or her license to practice law.

(2) The petition shall state that the petitioner cannot successfully defend against the allegations of misconduct.

(3) If a complaint has not been filed, the petition shall be filed in the supreme court and shall include the director's summary of the misconduct allegations being investigated. Within 20 days after the date of filing of the petition, the director shall file in the supreme court a recommendation on the petition. Upon a showing of good cause, the supreme court may extend the time for filing a recommendation.

(4) If a complaint has been filed, the petition shall be filed in the supreme court and served on the director and on the referee to whom the proceeding has been assigned. Within 20 days after the filing of the petition, the director shall file in the supreme court a response in support of or in opposition to the petition and serve a copy on the referee. Upon a showing of good cause, the supreme court may extend the time for filing a response. The referee shall file a report and recommendation on the petition in the supreme court within 30 days after receipt of the director's response.

(5) The supreme court shall grant the petition and revoke the petitioner's license to practice law or deny the petition and remand the matter to the director or to the referee for further proceedings.

failure to pay state bar dues and failure to comply with trust account certification. His disciplinary history consists of two private reprimands, one issued in 1994, Private Reprimand 1994-21, and one issued in 1995, Private Reprimand 1995-34.

¶3 On July 6, 2022, OLR filed a complaint against Attorney Fenger alleging seven counts of misconduct arising out of his representation of J.K. In December 2010, H.W., J.K.'s brother, passed away. J.K agreed to serve as personal representative for H.W.'s estate. J.K. filed an application for informal probate and served as personal representative without legal representation for about two years.

¶4 In August 2013, J.K. filed a general inventory on behalf of the estate listing a residential property in Milwaukee as the only asset. In December 2014, J.K. retained Attorney Fenger to assist her with the handling and closing of the estate. Attorney Fenger did not provide a written representation agreement to J.K. regarding the scope of his representation and did not intend to bill for his services due to prior work he had performed for J.K.'s spouse. J.K. told Attorney Fenger that she wanted to sell the residential property.

¶5 R.T. is a residential tenant at a property owned by Attorney Fenger in St. Francis, Wisconsin. That property consists of Attorney Fenger's law office on the ground floor and two residential units on the second floor. In exchange for discounted rent, R.T. performed maintenance and repair work at properties owned by Attorney Fenger. Attorney Fenger had

previously represented R.T. in a criminal matter in 2004 and 2005. In addition, in 2006, R.T. executed a general durable power of attorney (general POA) naming Attorney Fenger as his agent. The general POA gave Attorney Fenger the authority to buy and sell real estate on R.T.'s behalf. Attorney Fenger told OLR that R.T.'s health concerns had prompted him to execute the general POA.

¶6 After being retained by J.K., Attorney Fenger visited the residential property. R.T. accompanied him on that visit. During the visit, a neighbor indicated to either R.T. or Attorney Fenger a willingness to pay $30,000 for the property. R.T. subsequently informed Attorney Fenger that he was willing to pay $30,000 for the property.

¶7 J.K.'s family originally told Attorney Fenger that they were willing to accept $20,000 for the sale of the residential property, which had been vacant for several years and was in disrepair. Attorney Fenger advised them how to value the property and how to dispose of it. J.K., as personal representative, did not seek an independent appraisal for the property prior to the sale, nor did Attorney Fenger advise her to obtain one. Although it is disputed whether J.K. ever met R.T. in person, Attorney Fenger facilitated the agreement for J.K. to sell the property to R.T. Attorney Fenger did not disclose his relationship with R.T. to J.K. prior to the sale of the property.

¶8 In January 2015, Attorney Fenger prepared a WB-11 Residential Offer to Purchase in which he stated that he

4

represented the buyer, R.T., even though the personal representative, J.K., was his client. The WB-11 reflected a purchase price of $30,000. According to Attorney Fenger, R.T. asked that the WB-11 be backdated to January 2014 for tax reasons. Attorney Fenger knowingly backdated the offer and acceptance dates to January 2, 2014, and he drafted a closing statement which he backdated to January 3, 2014. The personal representative's deed purports to have been signed by J.K. on January 3, 2014.

¶9 The WB-11 contained a number of provisions that make the buyer and seller's interests adverse, such as the fact that the seller could continue to accept offers on the property even after binding acceptance of R.T.'s offer; the selection of the closing date which would impact the proration of real estate taxes imposed on the seller versus the buyer; and the possibility of defects in the property being discovered between the acceptance of the offer and the closing date which could render the sale null and void if the seller failed to either elect to cure the defects or elected to cure and then failed to do so.

¶10 In January 2015, Attorney Fenger prepared and submitted paperwork to incorporate MILW8946 LLC on behalf of R.T. Wisconsin Department of Financial Institution records reflect that the LLC's registration date was January 5, 2015. The sole purpose of the LLC was to purchase and then sell the residential property.

¶11 Instead of paying $30,000 of purchase money into Attorney Fenger's client trust account, Attorney Fenger decided that the $30,000 would be credited to his trust account over time in the form of work performed by R.T. on other real estate in which Attorney Fenger had an ownership interest. The credits toward payment for the property were made in the form of deposits and checks by Attorney Fenger into his trust account. The practical effect of the arrangement was an interest free land contract purchase by R.T. from the estate.

¶12 In a letter dated November 30, 2021 to OLR, Attorney Fenger represented that he considered the arrangement to be a loan between himself and R.T. and saw nothing wrong with the arrangement. However, the estate and J.K.'s family were the parties to whom the money was owed. Attorney Fenger never discussed the loan arrangement with the Ks; the Ks never consented to the loan agreement; the terms of the purported loan were never reduced to writing; and the Ks were not advised to seek the advice of independent legal counsel on the transaction.

¶13 Attorney Fenger acquired a pecuniary interest adverse to the Ks in that he made the arrangement with R.T. to barter R.T.'s handyman services as payment for the property. Attorney Fenger determined the value of services provided by R.T. to Attorney Fenger for work on Attorney Fenger's other real estate. Attorney Fenger determined when the credits resulting in payments by Attorney Fenger to his trust account would occur, and the $30,000 in actual funds for the sale of the property

6

were not deposited into Attorney Fenger's trust account in full until April 2017.

¶14 Attorney Fenger failed to hold the funds, or "credits," in trust on behalf of the estate and the Ks. The "credits" paid by Attorney Fenger into the trust account should have resulted in certain minimum balances in the trust account between the January 2015 sale of the property and July 2017, the termination of his representation of the Ks. In fact, the trust account balance fell below those expected minimum balance amounts during various periods of time.

¶15 In a letter dated February 3, 2020, Attorney Fenger represented to OLR's investigator that the funds from the January 2015 sale of the property were received by the estate and placed into Attorney Fenger's client trust account. The statement was false because, in fact, no funds were received from anyone.

¶16 In an April 9, 2021 email to OLR, Attorney Fenger represented that "[t]here were two cash payments from [Mr. T.]. One was in the amount of $5,000 and then there was a later second payment in the amount of $3,000. Those monies were placed in Mr. Fenger's trust account."

¶17 Those statements were also false because no cash payments had been made by R.T.

¶18 In a November 30, 2021 letter to OLR, Attorney Fenger disclosed that in fact, "[t]he $5,000 and $3,000 were not cash payments made by [Mr. T.], but rather credit." This statement

7

directly contradicted Attorney Fenger's April 9, 2021 statement that they were cash payments.

¶19 Attorney Fenger prepared a Statement For Closing Real Estate Transaction dated January 3, 2014, in which he represented that the buyer, R.T., was credited $30,000 toward the purchase of the property and that there was no balance due to the seller. R.T. signed the statement; the Ks did not sign the document.

¶20 On February 15, 2016, Attorney Fenger filed a petition for extension of time in the probate case requesting additional time to close the estate. Although the residential property was the only real estate that had been owned by the estate and it had already been sold, Attorney Fenger stated as one basis for needing an extension, "[r]eal estate needs to be sold or problems with the sale/distribution of the land." An addendum to the petition for extension of time stated, "[a]n Offer to Purchase Real Estate has been accepted – a closing is expected in early June . . . ." At the time the petition for extension of time was filed, the court had no information on file regarding the already completed sale of the real estate.

¶21 On or about July 11, 2017, J.K. terminated Attorney Fenger's representation of the estate. Attorney Fenger then transferred funds belonging to the estate from his client trust account to successor counsel. Attorney Fenger provided successor counsel with a check for $36,603.28 representing the estate's funds, which included funds received from the sale of the real estate. A few weeks after the first check, Attorney

8

Fenger provided successor counsel with a second check for $2,985.67 for the 2014 property taxes on the real estate.

¶22 In November 2017, after R.T. had performed renovations on the property, Attorney Fenger helped R.T. sell the property for $91,000.

¶23 The OLR's complaint alleged the following counts of misconduct:

> **Count 1:** By failing to disclose and describe his relationship to [R.T.] to the personal representative prior to the sale of the [residential property], Fenger violated SCR 20:1.4(a)(1).[2]

> **Count 2:** By arranging the sale of the [residential property] from his client personal representative to [R.T.], with whom he had personal and professional connections and whom he assisted in the transaction, Fenger violated SCR 20:1.7(a)(2).[3]

> **Count 3:** By knowingly backdating an offer to purchase and the Personal Representative's Deed conveying real property in order to make it appear that the real

---

[2] 20:1.4(a)(1) provides: "A lawyer shall promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in SCR 20:1.0(f), is required by these rules."

[3] SCR 20:1.7(a)(2) provides:

> Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

property sale had occurred a year prior to the actual sale, Fenger violated SCR 20:8.4(c).[4]

**Count 4**: By filing a petition for extension of time in the matter of the estate that contained misrepresentations of fact and material omissions concerning the status of the real estate owned by the decedent, Fenger violated SCR 20:3.3(a)(1).[5]

**Count 5**: By failing to hold in trust the funds or proceeds from the sale of the [residential property] on behalf of the Estate and the [Ks], Fenger violated SCR 20:1.15(b)(1).[6]

**Count 6**: By making false statements to OLR during its investigation regarding cash payments made by [R.T.] to Fenger for the purchase of the [residential property], Fenger violated SCR 22.03(6).[7]

---

[4] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] SCR 20:3.3(a)(1) provides: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[6] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[7] SCR 22.03(6) provides: "In the course of the investigation, the respondent's willful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentations in a disclosure are misconduct regardless of the merits asserted in the grievance."

**Count 7:** By acquiring a pecuniary interest adverse to the Estate and the [Ks], Fenger violated SCR 20:1.8(a).[8]

¶24 Attorney Fenger filed his petition for revocation by consent on October 17, 2022. The petition states he cannot successfully defend himself against the allegations of professional misconduct set forth in OLR's complaint. The petition states that Attorney Fenger has closed his law office, currently has no clients and has no intention of accepting any new clients, and has no intention or plan to resume the practice of law in the future. Attorney Fenger states he has been represented by counsel in this matter, is freely, voluntarily, and knowingly filing his petition and understands that by doing

---

[8] SCR 20:1.8(a) provides:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

so he is giving up his right to further contest each misconduct allegation in OLR's complaint.

¶25 The OLR filed a memorandum recommending that Attorney Fenger's petition for revocation by consent be granted and that his Wisconsin law license be revoked.

¶26 On November 9, 2022, the referee issued a report recommending that this court grant Attorney Fenger's petition for revocation of his license to practice law in Wisconsin. The referee noted that, "[t]he breadth and depth of the Respondent's misconduct is noteworthy" and that Attorney Fenger concurrently represented an individual whose interests were absolutely adverse to his client's and that he engaged in a pattern of deceit and fraud, including making false and misleading representations to his client, to a government agency, to a court, and to OLR. The referee also found that Attorney Fenger engaged in blatant trust account violations and "[h]is pattern of fraud and deceit was self-serving, and compromised his client's interests." The referee said that it was fitting that, with the advice of counsel, Attorney Fenger has petitioned this court for revocation by consent. The referee says, "[t]his is a satisfactory conclusion of this matter because it protects the public and the legal system from any further misconduct by Attorney Fenger."

¶27 Having reviewed Attorney Fenger's petition for consensual revocation, the OLR's recommendation on the petition, and the referee's report, we grant Attorney Fenger's petition for the revocation of his license to practice law in Wisconsin.

12

As the referee noted, Attorney Fenger engaged in multiple counts of misconduct by representing a client in the face of a clear conflict of interest. He engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. He knowingly made false statements of fact or law to a tribunal. He failed to hold client funds in trust. He made misrepresentations to OLR in the course of its investigation, and he acquired pecuniary interest adverse to his client.

¶28 The seriousness of Attorney Fenger's misconduct demonstrates the need to revoke his law license in order to protect the public, the courts, and the legal system from repetition of his misconduct; to impress upon him the seriousness of his misconduct; and to deter other attorneys from engaging in similar misconduct. The court has previously revoked attorneys' licenses when they face multiple counts of misconduct, including allegations of dishonest conduct and failing to hold funds in trust. See, e.g., In re Disciplinary Proceedings Against Knapp, 2021 WI 15, 395 Wis. 2d 833, 955 N.W.2d 152.

¶29 OLR states that it is not seeking to assess cost in this matter because Attorney Fenger agreed to resolve the matter soon after the complaint was filed, and OLR asked for the appointment of a referee solely for the purpose of reviewing the petition for consensual revocation and OLR's response. We accede to OLR's request that no costs be assessed against Attorney Fenger.

¶30  IT IS ORDERED that the petition for consensual license revocation is granted.

¶31  IT IS FURTHER ORDERED that the license of William E. Fenger to practice law in Wisconsin is revoked, effective the date of this order.

¶32  IT IS FURTHER ORDERED that William E. Fenger shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶33 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I concur in the court's order revoking Attorney Fenger's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. See SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. See In re Disciplinary Proceedings Against Moodie, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶34 I am authorized to state that Justices REBECCA GRASSL BRADLEY and BRIAN HAGEDORN join this concurrence.