# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2022AP673-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Laura R. Schwefel, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant, v. Laura R. Schwefel, Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST SCHWEFEL

| | |
|---|---|
| OPINION FILED: | May 26, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

JUSTICES:
Per Curiam. ZIEGLER, C.J., filed a concurring opinion in which REBECCA GRASSL BRADLEY, J., and HAGEDORN, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2022AP673-D

STATE OF WISCONSIN    :    IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Laura R. Schwefel, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant,**

    **v.**

**Laura R. Schwefel,**

        **Respondent.**

**FILED**

**MAY 26, 2022**

Sheila T. Reiff
Clerk of Supreme Court

---

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. Attorney Laura R. Schwefel has filed a petition for the consensual revocation of her license to practice law in Wisconsin pursuant to Supreme Court Rule (SCR) 22.19.[1] In her petition Attorney Schwefel states that she cannot

---

[1] SCR 22.19 provides:

> (1) An attorney who is the subject of an investigation for possible misconduct or the respondent in a proceeding may file with the supreme court a petition for the revocation by consent or his or her license to practice law.

successfully defend against multiple allegations of misconduct in connection with a grievance investigated by the Office of Lawyer Regulation (OLR).

¶2 Attorney Schwefel was admitted to practice law in Wisconsin in 1995. Her current mailing address is in Sussex, Wisconsin. Attorney Schwefel's disciplinary history consists of a public reprimand issued in 2014. Public Reprimand of Laura R. Schwefel, No. 2014-6 (electronic copy available at https://compendium.wicourts.gov/app/raw/002676.html).

---

(2) The petition shall state that the petitioner cannot successfully defend against the allegations of misconduct.

(3) If a complaint has not been filed, the petition shall be filed in the supreme court and shall include the director's summary of the misconduct allegations being investigated. Within 20 days after the date of filing of the petition, the director shall file in the supreme court a recommendation on the petition. Upon a showing of good cause, the supreme court may extend the time for filing a recommendation.

(4) If a complaint has been filed, the petition shall be filed in the supreme court and served on the director and on the referee to whom the proceeding has been assigned. Within 20 days after the filing of the petition, the director shall file in the supreme court a response in support of or in opposition to the petition and serve a copy on the referee. Upon a showing of good cause, the supreme court may extend the time for filing a response. The referee shall file a report and recommendation on the petition in the supreme court within 30 days after receipt of the director's response.

(5) The supreme court shall grant the petition and revoke the petitioner's license to practice law or deny the petition and remand the matter to the director or to the referee for further proceedings.

¶3 Attached to Attorney Schwefel's petition for revocation by consent is a copy of the disciplinary complaint that the OLR intended to file against her. The six counts of misconduct set forth in the complaint all arise out of Attorney Schwefel's relationship with H.K., an elderly woman born in 1931. H.K.'s husband died in 2003. H.K. met Attorney Schwefel around 2007 while both were visiting Florida. After H.K. returned to Wisconsin, the two women formed a friendship and went on social outings and vacations together.

¶4 Sometime between 2007 and 2009, Attorney Schwefel introduced H.K. to Attorney Sandra Ruffalo. H.K. and Attorney Ruffalo also formed a friendship that included social outings and visits in Wisconsin and Florida.

¶5 As of November 2009, H.K. was living independently in a condominium that she owned in Mequon, Wisconsin. In or about November 2009, H.K. suffered a capillary stroke that required hospitalization. After a few days in a hospital, she moved to a rehabilitation facility. While H.K. was hospitalized or in the rehabilitation facility, Attorney Schwefel suggested that H.K. should name Attorney Schwefel as her agent to make health care decisions in the event H.K. became incapacitated. Attorney Schwefel also suggested H.K. allow Attorney Schwefel to manage H.K.'s financial affairs, including managing H.K.'s bank accounts and paying H.K.'s bills. Attorney Schwefel suggested that H.K. sign a power of attorney naming Attorney Schwefel as her agent for financial matters.

¶6 H.K. trusted Attorney Schwefel to assist her with her financial affairs because Attorney Schwefel had held herself out to H.K. as an attorney who had acted as an agent or fiduciary for other people in the past and because H.K. considered Attorney Schwefel to be a friend. H.K. believed that Attorney Schwefel would act in H.K.'s best interests as H.K.'s fiduciary with regard to H.K.'s assets and that Attorney Schwefel would keep records of her handling of H.K.'s assets and financial affairs.

¶7 Around January 2010, Attorney Schwefel opened a checking account at M&I Bank. Rather than opening the account in H.K.'s name with Attorney Schwefel designated as an authorized signatory or agent, Attorney Schwefel titled the account jointly in her and H.K.'s names. The account was opened without obtaining H.K.'s informed consent to title the account jointly, explaining to H.K. that she would be giving Attorney Schwefel co-ownership of H.K.'s funds, or advising H.K. that Attorney Schwefel could manage H.K.'s finances and pay her bills without jointly titling the account. At the time the account was opened, H.K. did not intend to give Attorney Schwefel an ownership interest in the account or her funds. Rather, she believed and intended that any funds or accounts Attorney Schwefel accessed on H.K.'s behalf would remain H.K.'s sole assets.

¶8 On January 18, 2010, H.K. signed a durable power of attorney for health care and a basic power of attorney for finances and property. The health care power of attorney named

4

Attorney Schwefel as H.K.'s agent to make health care decisions for H.K. if H.K. became incapacitated. H.K.'s stepdaughter-in-law was named as the alternate health care agent. The 2010 health care power of attorney only authorized Attorney Schwefel or the alternate health care agent to act in the event H.K. was unable to make health care decisions for herself due to incapacity, which required two health care providers to examine H.K. and then sign a statement that she was incapacitated, or if H.K. were unconscious, comatose, senile, or otherwise "unreachable by communication."

¶9 Between January 2010 and September 2015, Attorney Schwefel held herself out and acted as H.K.'s agent under the financial power of attorney, including by signing documents as H.K.'s agent and communicating with various third parties as H.K.'s agent related to H.K.'s assets, property, and financial matters.

¶10 At various times since 2010, Attorney Schwefel asserted to health care providers, facility staff, the OLR, and other third parties that H.K. is a chronic alcoholic. The OLR has not received evidence that any health care provider ever diagnosed H.K. as suffering from alcohol abuse or dependence at times relevant to this matter. Records received by the OLR show several medical providers questioning Attorney Schwefel's assertions that H.K. suffered from alcohol dependence.

¶11 On March 1, 2010, Attorney Schwefel used $72,600.51 of H.K.'s funds from the jointly titled bank account to fund the purchase of a condominium in Naples, Florida. Attorney Schwefel

5

titled the unit in her own name as sole owner. H.K. did not authorize Attorney Schwefel to use her funds to purchase the condominium unit, and H.K. was unaware that her funds had been used to purchase the unit until she received materials from the OLR during its investigation.

¶12 In September 2010, Attorney Schwefel, as H.K.'s agent under the financial power of attorney, and with H.K.'s knowledge, sold H.K.'s Mequon condominium. Attorney Schwefel deposited $176,828.54 from the proceeds of the sale into the jointly titled bank account. Attorney Schwefel told H.K. the condominium sold for $125,000 when it actually sold for $194,000.

¶13 In September 2010, Attorney Schwefel opened a second account at M&I Bank, again titled jointly in her and H.K.'s names, rather than opening the account in H.K.'s name with Attorney Schwefel as her authorized signatory or agent. This second account was opened without obtaining H.K.'s informed consent to title the account jointly, explaining to H.K. that she would be giving Attorney Schwefel co-ownership of her funds and any future assets deposited in the account, or advising H.K. that Attorney Schwefel could manage H.K.'s finances and pay her bills without jointly titling the assets in Attorney Schwefel's name. At the time the account was opened, H.K. did not intend to give Attorney Schwefel an ownership interest in her assets. H.K. believed and intended that any funds or accounts Attorney Schwefel accessed would remain H.K.'s sole assets. Except for limited, discrete transactions, H.K. did not authorize Attorney

Schwefel to use her funds in either of the bank accounts for Attorney Schwefel's benefit or personal use.

¶14 On September 21, 2010, Attorney Schwefel transferred $190,000 from the first bank account to the second account, leaving only $1,604.13 in the first account.

¶15 In January 2012, Attorney Schwefel obtained and filled out change of beneficiary forms naming herself as beneficiary of two of H.K.'s individual retirement accounts and H.K.'s AXA Equitable Equivest account.

¶16 In March of 2012, H.K. executed a new durable power of attorney for health care naming Attorney Schwefel as her agent to make health care decisions in the event H.K. became incapacitated. H.K. named Attorney Ruffalo as her alternate health care agent. The 2012 health care power of attorney only authorized Attorney Schwefel or the alternate health care agent to act if H.K. was unable to make health care decisions for herself due to incapacity. H.K. was never declared incompetent or incapacitated, and the 2012 health care power of attorney was never activated.

¶17 By 2012, H.K. had begun to be afraid of Attorney Schwefel and the control Attorney Schwefel exerted over H.K.'s life. Attorney Schwefel was sometimes verbally harsh with H.K. and was also sometimes rough in her physical treatment of H.K. H.K.'s fear of Attorney Schwefel and the control she had over H.K.'s life contributed to H.K. experiencing periods of worsening depression between 2012 and 2014.

7

¶18 In July 2012, Attorney Schwefel wired $100,000 of H.K.'s funds to Bay Breeze Title Services LLC. The transfer represented a loan to Attorney Ruffalo to fund a real estate transaction for Attorney Ruffalo's benefit, which Attorney Ruffalo was to repay within one year. H.K. did not know, understand, or consent to her funds being loaned to Attorney Ruffalo.

¶19 In or about March or April 2013, Attorney Ruffalo told Attorney Schwefel and H.K. about a condominium that was available in Naples, Florida. Attorney Ruffalo believed that H.K. wanted to purchase the unit and agreed to represent her in the purchase. At the time, H.K. did not have sufficient funds in the two bank accounts opened by Attorney Schwefel to purchase the unit. Attorney Ruffalo agreed to repay her July 2012 loan by providing the funds necessary to purchase the condominium unit on the day of closing. In or about April 2013, Attorney Schwefel entered into an offer to purchase the condominium unit in her own name, on terms negotiated with the sellers by Attorney Ruffalo, including the purchase price of $110,000. On May 3, 2013, Attorney Schwefel assigned the contract to purchase the unit to H.K. The assignment asserted that there was an agreement between H.K. and Attorney Schwefel that the condominium unit would be purchased with a transfer on death deed naming Attorney Schwefel as the beneficiary, or with a deed that titled the property in both H.K.'s and Attorney Schwefel's names as joint tenants with right of survivorship.

8

¶20 H.K. did not sign the assignment. Attorney Ruffalo signed it as H.K.'s agent. H.K. was not provided with a copy of the assignment at the time Attorney Ruffalo signed it on her behalf. H.K. did not understand that her funds were being used to purchase the condominium unit. Instead, H.K. believed that she was only investing approximately $20,000 in Attorney Schwefel's purchase of the unit. The purchase of the unit closed on May 17, 2013. The unit was titled jointly in Attorney Schwefel's and H.K.'s names, with right of survivorship. Attorney Schwefel did not contribute any funds toward the purchase of the unit. All or substantially all of the funds used to purchase the unit came from H.K.'s funds, including the transfer of funds from Attorney Ruffalo, as repayment of the July 2012 loan from H.K.'s funds.

¶21 Attorney Schwefel undertook an extensive renovation of the unit using H.K.'s funds.

¶22 Sometime between May 2013 and October 2013, H.K. began to decline Attorney Schwefel's visits and telephone calls. In late 2013 or early 2014, H.K. experienced a period of worsening depression, at least in part because she felt afraid of Attorney Schwefel and the control Attorney Schwefel had exerted over her life.

¶23 At various times, H.K. lived in Attorney Schwefel's home. On or about July 31, 2014, Attorney Schwefel moved H.K. from Attorney Schwefel's home to a memory care unit in Sussex, Wisconsin. H.K. did not require the level of care provided in a memory care unit. Even though H.K. had not been declared

9

incompetent, Attorney Schwefel signed documents holding herself out as H.K.'s agent under the financial power of attorney. On July 31, 2014, staff at the memory care unit met with H.K. and Attorney Schwefel, at which time it was agreed that H.K. was independent in all aspects of life. Despite the fact that H.K. was competent and the management of the facility agreed that she was independent in all aspects of life, staff at the facility often treated H.K. as if Attorney Schwefel had authority to control aspects of H.K.'s life, such as providing Attorney Schwefel with notice of H.K.'s activities and actions as H.K.'s power of attorney, requiring Attorney Schwefel's permission for certain activities, and following Attorney Schwefel's directives as to communications with and treatment of H.K. as H.K.'s power of attorney. Attorney Schwefel did not tell staff at the facility that H.K. was permitted to make her own decisions.

¶24 H.K. was unhappy living at the facility, especially due to the number of residents with dementia and cognitive issues, and the lack of appropriate social and intellectually stimulating activities for H.K. While H.K. resided at the facility, Attorney Schwefel withheld funds from H.K. and misrepresented that H.K. had used up a lot of her money and could not afford purchases such as cigarettes.

¶25 In September 2014, H.K. was seen and assessed at a senior health center. Although Attorney Schwefel had claimed H.K. suffered from memory loss, the medical professionals assessing H.K. did not note any forgetfulness and opined that H.K. could live in a more independent setting. Attorney

10

Schwefel did not inform the memory care facility staff that H.K. was competent to make her own decisions.

¶26 In or about December 2014, based at least in part on misrepresentations of H.K.'s mental condition, Attorney Schwefel asked Attorney Ruffalo to draft a quit claim deed to transfer H.K.'s interest in the Florida condominium unit to Attorney Schwefel for the stated consideration of $20,000. Attorney Schwefel led Attorney Ruffalo to believe that H.K. had already agreed to the terms of the transfer. Attorney Schwefel told H.K. that if she signed the quit claim deed, Attorney Schwefel would return the $20,000 investment H.K. had made in the condominium unit. H.K. signed the quit claim deed on December 11, 2014. Attorney Ruffalo notarized H.K.'s signature. As H.K.'s funds had been used to purchase the condominium and pay for improvements on it, H.K.'s interest in the unit was valued at more than $20,000 as of December 2014 and potentially as much as the entire value of the condominium. The quit claim deed asserted that Attorney Schwefel paid H.K. $20,000 in consideration of the transfer, but as of March 2017, Attorney Schwefel had not paid that amount to H.K.

¶27 In March 2015, H.K.'s primary care physician saw H.K. for a checkup and found her to be stable and with excellent cognitive function, with her depression in remission.

¶28 In June 2015, H.K. moved to Florida with Attorney Ruffalo's assistance. Attorney Schwefel expressed anger at H.K. and Attorney Ruffalo that they had planned H.K.'s move without consulting Attorney Schwefel. In or about June 2015, Attorney

11

Schwefel informed H.K., either directly or through Attorney Ruffalo or H.K.'s paid caregiver, that Attorney Schwefel would no longer serve as H.K.'s caregiver or agent under any powers of attorney. She asked that H.K. sign new powers of attorney naming an agent other than Attorney Schwefel. Attorney Schwefel did not take any action between June and August 2015 to remove her name from the bank accounts or ask H.K. if she should disburse the funds to H.K. or transfer the funds to a new account. Attorney Schwefel continued to manage at least some of H.K.'s finances and continued to use H.K.'s credit card without H.K.'s authorization for purchases and services unrelated to H.K.

¶29 In or about April 2016, H.K. consulted with Attorney Terrance Cahill regarding Attorney Schwefel's actions during the time she acted as H.K.'s caregiver and agent under the financial power of attorney. On April 28, 2016, H.K. formally revoked any and all powers of attorney she had previously signed naming Attorney Schwefel as her agent, including the financial power of attorney. By letter dated April 28, 2016, H.K., through Attorney Cahill, notified Attorney Schwefel that H.K. had revoked the powers of attorney and requested an accounting from Attorney Schwefel. Attorney Schwefel provided Attorney Cahill with some records but did not provide an accounting or other receipts or records of her handling of H.K.'s assets.

¶30 In March 2017, H.K., through Attorney Cahill, filed a petition with the Waukesha County Circuit Court for review of Attorney Schwefel's conduct while serving as H.K.'s agent under

12

the financial power of attorney. H.K. sought an accounting, a court order requiring Attorney Schwefel to restore to H.K. the value of her property lost due to Attorney Schwefel's breach of her fiduciary duties to H.K., and H.K's costs and attorney's fees in having to pursue court action. In June 2017, Attorney Schwefel filed a motion to dismiss and an affidavit in support of the motion in which she misrepresented her actions under the power of attorney. During a June 29, 2017, court hearing, Attorney Schwefel misled the circuit court as to the existence of and whether she had ever acted as H.K.'s agent under the financial power of attorney.

¶31 In lieu of an accounting, in November 2017 Attorney Schwefel and H.K. signed a settlement agreement pursuant to which Attorney Schwefel paid H.K. $60,000 and H.K. released all claims against Attorney Schwefel related to Attorney Schwefel's acting as H.K.'s agent under the health care powers of attorney and the financial power of attorney. The Waukesha County case was dismissed in December 2017 pursuant to the settlement.

¶32 During the OLR's initial intake evaluation of H.K.'s grievance, in a letter to the OLR dated March 10, 2019, Attorney Schwefel misrepresented that in late 2009 or early 2010 H.K. stated that she sought to have her checking account titled in the names of H.K. and Attorney Schwefel. In a June 28, 2019, letter to the OLR, Attorney Schwefel made numerous misrepresentations in response to H.K.'s grievance.

¶33 The OLR's draft complaint against Attorney Schwefel alleged the following counts of misconduct:

13

**Count 1:** By using her position of trust to open two bank accounts as jointly owned accounts, without H.K.'s knowing and informed consent to title the accounts jointly in their names, in each instance Attorney Schwefel violated SCR 20:8.4(c),[2] and with regard to the second bank account, Attorney Schwefel also violated Wis. Stat. § 244.14(1)(b),[3] Wis. Stat. § 244.14(2)(a) and (b),[4] and thereby violated SCR 20:8.4(f).[5]

**Count 2:** By (a) converting $72,600.51 of H.K.'s funds to purchase a condominium in her own name without H.K.'s knowledge or informed consent, and (b) using H.K.'s credit card for purchases and services that were not for H.K.'s benefit without H.K.'s knowledge or informed consent, in each instance, Attorney Schwefel violated SCR 20:8.4(c).

**Count 3:** By using her position of trust to cause H.K. to transfer her interest in the condominium unit in Naples, Florida to Attorney Schwefel for less than the fair market value of H.K.'s interest and investment in the condominium, including by not paying the $20,000

---

[2] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] Wis. Stat. § 244.14(1)(b) provides: "Notwithstanding any provisions to the contrary in the power of attorney, an agent who has accepted appointment shall act in good faith." (2019-2020).

All subsequent references to the Wisconsin Statutes are to the 2019-2020 version.

[4] Wis. Stat. § 244.14(2) provides: "Except as otherwise provided in the power of attorney, an agent who has accepted an appointment shall: (a) Act loyally for the principal's benefit. (b) Act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest."

[5] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

14

purchase price to H.K., Attorney Schwefel violated SCR 20:8.4 (c), and Attorney Schwefel also violated Wis. Stat. § 244.14(1)(b) and Wis. Stat. § 244.14(2)(a) and (b), and thereby violated SCR 20:8.4(f).

**Count 4:** By failing to maintain records and receipts of all actions taken on behalf of H.K. during the time in which she acted as H.K.'s agent under the financial power of attorney, contrary to Wis. Stat. § 244.14(2)(d),[6] and by failing to provide H.K. with an accounting upon her request, contrary to Wis. Stat. § 244.14(8)(a)[7] and Wis. Stat. § 244.14(9),[8] in each instance, Attorney Schwefel violated SCR 20:8.4(f).

**Count 5:** By misleading the Waukesha County Circuit Court as to the existence of the financial power of attorney, Attorney Schwefel violated SCR 20:8.4(c).

**Count 6:** By making misrepresentations to OLR: a. during the OLR's initial intake evaluation of this matter, Attorney Schwefel violated SCR 20:8.4(c), and b. during the OLR's formal investigation of this matter, Attorney Schwefel violated SCR 22.03(6)

---

[6] Wis. Stat. § 244.14(2)(d) provides: "Except as otherwise provided in the power of attorney, an agent who has accepted an appointment shall keep a record of all receipts, disbursements, and transactions made on behalf of the principal."

[7] Wis. Stat. § 244.14(8)(a) provides: "Except as otherwise provided in the power of attorney, an agent is not required to disclose receipts, disbursements, or transactions conducted on behalf of the principal unless ordered by a court or requested by the principal."

[8] Wis. Stat. § 244.14(9) provides: "If ordered or requested to disclose information under sub. (8), the agent shall comply with the request within 30 days or provide a writing or other record substantiating why additional time is needed and shall comply with the request within an additional 30 days."

15

enforceable under the Rules of Professional Conduct via SCR 20:8.4(h).[9]

¶34 Attorney Schwefel's petition for consensual revocation states that she cannot successfully defend herself against the allegations of professional misconduct set forth in the OLR's draft complaint. She agrees that she should be ordered to make restitution of $75,298.13 to H.K. Her petition asserts that she is seeking consensual revocation freely, voluntarily, and knowingly. She states that she understands she is giving up her right to contest the OLR's allegations. Attorney Schwefel is represented by counsel in this disciplinary proceeding.

¶35 The OLR has filed a recommendation on Attorney Schwefel's petition for consensual license revocation. The OLR states that revocation is warranted and necessary. The OLR's recommendation also contains a restitution request asking that Attorney Schwefel be ordered to pay restitution in the amount of $75,298.13 to H.K.

¶36 Having reviewed Attorney Schwefel's petition for consensual revocation, the OLR's draft complaint, and the OLR's recommendation on Attorney Schwefel's petition, we accept Attorney Schwefel's petition for the revocation of her license to practice law in Wisconsin. Attorney Schwefel took advantage of her friendship with a vulnerable person and over an extended

---

[9] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

16

period of time she converted tens of thousands of dollars of H.K.'s funds to her own use and exerted control over all aspects of H.K.'s life. When confronted with evidence of her conversion, she lied to a circuit court and the OLR. The seriousness of Attorney Schwefel's misconduct demonstrates the need to revoke her law license in order to protect the public, the courts, and the legal system from repetition of her misconduct; to impress upon Attorney Schwefel the seriousness of her misconduct; and to deter other attorneys from engaging in similar misconduct. Revocation of Attorney Schwefel's license is consistent with existing precedent. This court has previously revoked the licenses of attorneys when they face allegations of converting funds to their own use and benefit. See, e.g., In re Disciplinary Proceedings Against Wynn, 2014 WI 17, 353 Wis. 2d 132, 845 N.W.2d 663.

¶37 Turning to the issue of restitution, the petition for revocation by consent and the OLR's memorandum in support thereof called for Attorney Schwefel to make restitution to H.K. in the amount of $75,298.13 but did not indicate how that amount was arrived at, nor was there a clear statement that H.K. had agreed to that amount of restitution.

¶38 In response to a May 18, 2022 order of this court asking for additional information about restitution, the OLR submitted a letter noting that H.K. commenced a civil lawsuit against Attorney Schwefel that was ultimately settled and ordinarily when a respondent and grievant have entered into a settlement to resolve a civil action involving matters that are

17

related to a grievance, the OLR would not seek additional restitution. In this case, however, H.K. and her attorney were unaware at the time the civil suit was settled that Attorney Schwefel had used $72,600.54 of H.K.'s funds in 2010 to purchase a condominium that Attorney Schwefel titled solely in her own name. The OLR also states that its investigation revealed that Attorney Schwefel charged $948 in airfare to H.K.'s credit card for Attorney Schwefel and her nephew to fly to Florida in April of 2015, and between May 17, 2015 and August 27, 2015, Attorney Schwefel used H.K.'s credit card to purchase meals, gas, and other products and services totaling $1,749.59 that were not for the benefit of H.K. The OLR states that since H.K. was unaware of these conversations at the time she filed her grievance, she did not anticipate receiving additional restitution through the grievance process, but having been informed of the OLR's investigative findings regarding these additional conversions that Attorney Schwefel had concealed, she agrees that it is appropriate to order Attorney Schwefel to make restitution to H.K. in the amount of $75,298.13. We, too, agree that ordering Attorney Schwefel to pay restitution in that amount is appropriate.

¶39 Because Attorney Schwefel petitioned for the consensual revocation of her Wisconsin law license before the appointment of a referee, and because the OLR has not requested the imposition of costs, we do not assess the costs of this proceeding against Attorney Schwefel.

18

¶40 IT IS ORDERED that the petition for consensual license revocation is granted.

¶41 IT IS FURTHER ORDERED that the license of Laura R. Schwefel to practice law in Wisconsin is revoked, effective July 7, 2022.

¶42 IT IS FURTHER ORDERED that within 60 days of the date of this order, Laura R. Schwefel shall pay restitution in the amount of $75,298.13 to H.K.

¶43 IT IS FURTHER ORDERED that Laura R. Schwefel shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶44 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I concur in the court's order revoking Attorney Schwefel's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for readmittance after a period of five years. See SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. See In re Disciplinary Proceedings Against Moodie, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶45 I am authorized to state that Justices REBECCA GRASSL BRADLEY and BRIAN HAGEDORN join this concurrence.

1

1