# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1781-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Robert B. Moodie, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent, v. Robert B. Moodie, Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST MOODIE

| | |
|---|---|
| OPINION FILED: | April 22, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 13, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

JUSTICES:
ZIEGLER, J. dissents, joined by ROGGENSACK, C. J.
NOT PARTICIPATING:
ANN WALSH BRADLEY, J. did not participate.

ATTORNEYS:

For the respondent-petitioner, there were briefs filed by *Terry E. Johnson* and *von Briesen & Roper, S.C.*, Milwaukee. Oral argument by *Terry E. Johnson*.

For the complainant-respondent, there was a brief filed by *Thomas Laitsch* and *Office of Lawyer Regulation*, Madison. Oral argument by *Thomas Laitsch*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP1781-D

STATE OF WISCONSIN : IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against Robert B. Moodie, Attorney at Law:

Office of Lawyer Regulation,

      Complainant-Respondent,

  v.

Robert B. Moodie,

      Respondent-Appellant.

**FILED**

**APR 22, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. This disciplinary matter comes to the court on Attorney Robert B. Moodie's appeal of a report and recommendation of Referee James W. Mohr, Jr. The referee based his report in part on Attorney Moodie's stipulation to the two counts of misconduct alleged in the Office of Lawyer Regulation's (OLR) complaint involving his conversion of fees belonging to his law firm to his personal use. Attorney Moodie reserved his right to be heard on the matter of sanctions. After holding a hearing on sanctions and receiving post-hearing briefs, the referee issued

a report recommending that the court suspend Attorney Moodie's law license for a period of six months, and order Attorney Moodie to pay the full costs of this proceeding, which total $6,081.63 as of January 15, 2020.

¶2 When we review a referee's report and recommendation in an attorney disciplinary case, we affirm the referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶3 After reviewing this matter and considering Attorney Moodie's appeal, we accept the referee's factual findings and legal conclusions based on the parties' stipulation. We agree with the referee's recommendation that a six-month suspension is appropriate, despite Attorney Moodie's arguments to the contrary. We order Attorney Moodie to pay the full costs of this disciplinary hearing.

¶4 The OLR initiated this disciplinary proceeding with the filing of a two-count complaint. Attorney Moodie filed an answer in which he generally admitted the factual allegations of the complaint, as well as the two counts of alleged misconduct. Attorney Moodie later entered into a stipulation in which he pled no contest to the misconduct alleged in the complaint, and agreed

that the referee could use the allegations of the complaint as an adequate factual basis for a determination of misconduct.

¶5 The referee's report accepted the parties' stipulation and determined that the stipulated facts supported legal conclusions that Attorney Moodie had engaged in the two counts of misconduct alleged by the OLR. The referee's factual findings and conclusions of law are described in the following paragraphs.

¶6 Attorney Moodie was admitted to practice law in Wisconsin in 1982. He practiced at a law firm in Waukesha, Wisconsin for over 30 years. He has no disciplinary history.

¶7 In September 2016, Attorney Moodie suffered a serious health event resulting in a lengthy hospitalization. During Attorney Moodie's absence, other members of the firm assumed responsibility for his client files, including the management of his billing. While handling Attorney Moodie's files and billing, the firm discovered that over an 18-month period, Attorney Moodie had converted fees in five client matters for his personal use. It is undisputed that in some matters, he received billed fees directly from the client and failed to tender them to the firm; in others, he collected money directly from the client and then wrote-off his billable time. The converted fees totaled $8,665. Had Attorney Moodie not converted these fees, he would have ultimately received 55-60 percent of them under the terms of the firm's compensation system.

¶8 In November 2016, after the firm discovered Attorney Moodie's misappropriations, Attorney Moodie consented to the redemption of his shares in the firm, ending his employment there.

3

As part of the redemption, any claims by the firm against Attorney Moodie were settled.

¶9 The firm reported Attorney Moodie's conduct to the OLR, and the OLR commenced this disciplinary matter. As noted earlier, Attorney Moodie stipulated to the two counts of misconduct alleged by the OLR:

- Count 1: By converting at least $8,665 in fees belonging to his law firm for his own personal use, Attorney Moodie violated SCR 20:8.4(c). That rule provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

- Count 2: By failing to tender and report to his law firm fees that he received, and by misrepresenting write-offs of billable time to his firm, Attorney Moodie breached his fiduciary duty to his firm, and his duty of honesty in his professional dealings with the firm, in violation of the standard of conduct set forth in In re Disciplinary Proceedings Against Shea, 190 Wis. 2d 560, 527 N.W.2d 314 (1995). See SCR 20:8.4(f) (providing that "[i]t is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers.")

¶10 Referee Mohr held a sanctions hearing. Attorney Moodie testified, and was at a loss to explain his actions. His household was not short of money. He and his law partners had had

4

professional disagreements, but he declined to categorize his misappropriations as a form of retribution. He had health issues and gambling issues during the period of his misconduct, but he did not cite them as a reason for his misconduct, and he has not raised a medical defense in these proceedings. Attorney Moodie also confirmed that, under his firm's compensation system, he would have ultimately collected between 55-60 percent of the $8,665 in fees that he misappropriated, making his actions, in his words, "just wrong and dumb."

¶11 In post-hearing briefing, the OLR asserted that a one-year suspension was appropriate, whereas Attorney Moodie argued that no more than a 60-day suspension was appropriate.

¶12 In his report, the referee recommended that the court suspend Attorney Moodie's law license for six months. In making this recommendation, the referee discussed various mitigating and aggravating circumstances. On the mitigating side, the referee noted that Attorney Moodie had been a member of his law firm for over 30 years, without any past disciplinary issues. The amount of the misappropriation was relatively small, and Attorney Moodie has repaid it. He has admitted his misconduct, cooperated with the OLR, and expressed sincere remorse. On the aggravating side, the referee noted that Attorney Moodie converted fees over a period of 18 months, without any obvious motive. Considering these circumstances together with the range of discipline imposed in previous cases involving the misappropriation of firm funds, the referee concluded that a six-month suspension was in order.

5

¶13 On appeal, Attorney Moodie argues that the referee's recommended six-month suspension is excessive. He claims that this case is most analogous to In Re Disciplinary Proceedings Against Casey, 174 Wis. 2d 341, 496 N.W.2d 94 (1993), where the court imposed a stipulated 60-day suspension on a lawyer who misappropriated three client retainers totaling $2,300. Attorney Moodie argues that his case involves a similar amount of clients and money, and that he, like the respondent-lawyer in Casey, stipulated to the misconduct in question. Thus, he reasons that a 60-day suspension is as appropriate here as it was in Casey. Attorney Moodie also argues that his conduct is mitigated by a variety of factors, including that it was an inexplicable departure from his normal character and from common sense. This is an "unusual and baffling" case, he says, because "there was no cause, basis[,] or motivation for the conversions." Attorney Moodie also notes that a six-month suspension will require him to go through the reinstatement process, see SCR 22.28(3), which can add as much as 18 months on to a suspension period. Attorney Moodie claims that an "effective suspension" of two years "may well be the equivalent of revocation" given his age and health issues.

¶14 The OLR responds that the facts and the law support the recommended six-month suspension. The OLR argues that Attorney Moodie engaged in an 18-month period of deceit and dishonesty, and he presents no excuse for his behavior. His reliance on Casey is misplaced, the OLR says, because the respondent-lawyer in Casey was an inexperienced first-year associate, not a shareholder and trusted 30-year member of the firm. Moreover, the Casey court

announced that, going forward, the court would sanction a misappropriation of firm funds as severely as a misappropriation of client funds. Casey, 174 Wis. 2d at 341-43. The court has held true to its word, the OLR says, as evidenced by such cases as In re Disciplinary Proceedings Against Olson, 216 Wis. 2d 483, 574 N.W.2d 245 (1998) (one-year suspension for lawyer who wrote himself unauthorized law firm checks totaling $11,250 from the firm's bank account, and then deleted some of them from the firm's check register), and In re Disciplinary Proceedings Against Schaller, 2006 WI 40, 290 Wis. 2d 65, 713 N.W.2d 105 (two-year suspension for lawyer who retained about $4,300 in client funds for his own use, failed to report that money on his tax returns, and practiced law for three-and-a-half months while his license was administratively suspended). Finally, the OLR acknowledges that a six-month suspension would require Attorney Moodie to go through the formal reinstatement process——a positive consequence, the OLR says, given that Attorney Moodie has no rational justification for his behavior. His inability to explain his own actions makes it prudent to require him to prove his moral character and fitness for re-licensure.

¶15 As we view the matter, the OLR has the better of the two arguments. We agree with the OLR that Attorney Moodie's reliance on Casey——where we imposed a 60-day suspension for the misappropriation of three client retainers totaling $2,300——is misplaced. Our modest 60-day suspension imposed in Casey came with an explicit disclaimer: we issued it "on the basis of discipline *previously imposed* for similar misconduct." Casey, 174

7

Wis. 2d at 341 (emphasis added). "[L]est attorneys rely on our disposition of this proceeding or prior proceedings involving similar attorney misconduct," we explicitly directed the State Bar to "bring to the attention of its members" the fact that "in the future the court will treat an attorney's misappropriation of funds belonging to another lawyer, associate or firm in practice with that lawyer no differently than it treats misappropriation of funds belonging to a lawyer's client," and this behavior "will be disciplined severely." Id. at 341-43. In other words, we warned in Casey that when it comes to modest 60-day suspensions for misappropriation of firm funds, that was then, this is now, and things have changed. And so they have: since Casey, we have consistently imposed suspensions of at least six months for misappropriations of firm funds.[1] The six-month suspension imposed here fits comfortably within this caselaw.

---

[1] See In Re Disciplinary Proceedings Against Curran, 180 Wis. 2d 540, 509 N.W.2d 429 (1994) (imposing two-year suspension); In Re Disciplinary Proceedings Against Shea, 190 Wis. 2d 560, 527 N.W.2d 314 (1995) (imposing six-month suspension); In Re Disciplinary Proceedings Against Olson, 216 Wis. 2d 483, 574 N.W.2d 245 (1998) (imposing one-year suspension); In Re Disciplinary Proceedings Against Brown, 2005 WI 49, 280 Wis. 2d 44, 695 N.W.2d 295 (imposing 18-month suspension); In Re Disciplinary Proceedings Against Peterson, 2006 WI 41, 290 Wis. 2d 74, 713 N.W.2d 101 (imposing two-year suspension); In Re Disciplinary Proceedings Against Schaller, 2006 WI 40, 290 Wis. 2d 65, 713 N.W.2d 105 (imposing two-year suspension); In Re Disciplinary Proceedings Against Siderits, 2013 WI 2, 345 Wis. 2d 89, 824 N.W.2d 812 (imposing one-year suspension); In Re Disciplinary Proceedings Against Koenig, 2015 WI 16, 361 Wis. 2d 16, 859 N.W.2d 105 (imposing two-year suspension); In Re Disciplinary Proceedings Against Hotvedt, 2016 WI 93, 372 Wis. 2d 68, 888 N.W.2d 393 (imposing 18-month suspension); In Re Disciplinary Proceedings Against Trupke, 2018 WI 43, 381 Wis. 2d 136, 911 N.W.2d 361 (imposing one-year suspension).

¶16 We also hold that the fact that we only know what Attorney Moodie did (misappropriate firm funds) and how he did it (billing improprieties), and have no idea why he did do so, cuts against an argument of mitigation. When it comes to evaluating the discipline owed for a lawyer's misconduct, the "why" is often as important as the "what" and the "how." We decline to establish a precedent whereby the lack of a rational explanation for a lawyer's misconduct serves to mitigate the sanction owed for it. A shrug of the shoulders is not a defense.

¶17 If anything, Attorney Moodie's inability to explain his behavior weighs in favor of a six-month suspension, which will require him to successfully complete the formal reinstatement process in order to regain his Wisconsin law license. See SCRs 22.29-22.33. This process will require Attorney Moodie to fully account for his moral lapses and explain how they have been addressed to ensure they will not happen again. See SCR 22.31; see also In re Disciplinary Proceedings Against Arthur, 2005 WI 40, ¶78, 279 Wis. 2d 583, 694 N.W.2d 910 (lawyer disciplinary system aims to prevent unethical lawyers from repeating their misconduct). As for Attorney Moodie's claim that the length of the reinstatement process may preclude him from practicing again given his age and health, we have made clear that we will not "countenance a rule that would soft-pedal the discipline owed to attorneys" who commit misconduct "so long as they do so in the twilight of their careers." In re Disciplinary Proceedings Against Carter, 2014 WI 126, ¶26, 359 Wis. 2d 70, 856 N.W.2d 595.

9

¶18 We do not, however, impose the condition of reinstatement recommended by the referee:

that in the event Attorney Moodie's law license is restored and he resumes practice, it be on the condition that for a period of three years following such restoration, he practice only as a sole proprietor or as an employee, and not as a partner or shareholder in a law firm.

Neither party has voiced support for this condition. It is unclear how requiring Attorney Moodie to practice as a sole proprietor, with no collegial oversight, or as an employee would deter future misconduct of the type that occurred here. Consequently, we decline to impose this recommended condition of reinstatement.

¶19 Because Attorney Moodie has already made full restitution to his former firm, no restitution award is sought, and none is ordered.

¶20 Finally, as is our general practice, we impose full costs on Attorney Moodie, which total $6,081.63 as of January 15, 2020. Neither the OLR nor Attorney Moodie challenges the imposition of full costs.

¶21 IT IS ORDERED that the license of Robert B. Moodie to practice law in Wisconsin is suspended for a period of six months, effective June 3, 2020.

¶22 IT IS FURTHER ORDERED that within 60 days of the date of this order, Robert B. Moodie shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $6,081.63 as of January 15, 2020.

¶23 IT IS FURTHER ORDERED that, to the extent that he has not already done so, Robert B. Moodie shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶24 IT IS FURTHER ORDERED that compliance with all conditions with this order is required for reinstatement. See SCR 22.29(4)(c).

¶25 ANN WALSH BRADLEY, J., did not participate.

¶26 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting).* I respectfully dissent because I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say, and here the discipline imposed will far exceed that which is stated. While we have consistently said there is no fixed formula for determining the "right" amount of lawyer discipline, that amounts to lip service because here we abdicate the responsibility we have to individualize our determinations when it comes to lawyer discipline and should not instead default to a mandatory minimum set in another case based upon other facts. See, e.g., In re Disciplinary Proceedings Against Siderits, 2013 WI 2, ¶33, 345 Wis. 2d 89, 824 N.W.2d 812, (acknowledging that the imposition of discipline in attorney disciplinary cases "is not an exact science"). Each case is different, we say, and discipline must be tailored to each case's unique facts. See id., ¶¶31-32. Here, the court imposes what it views as a mandatory minimum six-month suspension of Attorney Moodie's license even though, in reality, a six-month suspension may very well be three or four times that amount because of the required reinstatement process. See SCRs 22.29-22.33. In other words, for Attorney Moodie, a six-month suspension could be two years and perhaps the equivalent of revocation. Here, that is excessive. We should decide each case independently.

¶27 The referee concluded that here any suspension must be for a minimum period of six months because a previous case stated as much and the cases in its wake have gone no lower. See In re Disciplinary Proceedings Against Casey, 174 Wis. 2d 341, 341-42,

1

496 N.W.2d 94 (1993); see, e.g., In re Disciplinary Proceedings Against Shea, 190 Wis. 2d 560, 572, 527 N.W.2d 314 (1995). I disagree that this court, when essentially acting as the "sentencing" decision maker in a lawyer discipline case, is forever hamstrung from exercising any discretion. I disagree that we are bound to a mandatory minimum six-month penalty because of other fact-dependent cases. I disagree that we should have judicially imposed automatic mandatory minimum penalties for all such cases going forward no matter the evidence. If we so constrain ourselves, there is little room for judicial decision making or case-specific determinations, and we abdicate our responsibility to weigh and consider what is appropriate discipline in each individual case. We should not be so robotically confined.

¶28 The record below demonstrates that absent this perceived constraint, the referee's recommendation would likely have been less than six months and definitely not for up to two years. The record makes clear that Attorney Moodie's case was notably different than the cases relied upon by the OLR. For example, Attorney Moodie's conduct is less severe than that in Shea. In fact, as the referee noted, there are numerous mitigating circumstances present in this case:

> [Attorney Moodie] was the senior partner in a well-established and well-respected firm, having been a member of the firm for over 30 years, he has no prior disciplinary record, the amount taken by [Attorney Moodie] which should have gone to his partners (approximately $3,000 to $3,500) was relatively small and has been fully repaid, he and his firm have resolved all issues between them[.]

¶29 The referee's findings further reflect that Attorney Moodie was forthright and sincere. The referee noted:

> [Attorney Moodie] has admitted his misconduct, is extremely and sincerely remorseful for it, and has fully cooperated in the OLR investigation, stipulating to all of the relevant facts.

¶30 In addition, Attorney Moodie apparently had a heart attack and resultant health issues that will affect his practice of law, may have played a role in the violation at issue, and ought to be considered to some degree. From the record, it appears that his conduct is completely out of character and will not occur again. There is virtually no chance Attorney Moodie will work with other lawyers in a law firm setting again. He is not then a threat to taking other lawyers' money. The record also reflects that the amounts he converted may have ultimately been due to him. The evidence here reveals that unlike some, Attorney Moodie is not a threat to the legal profession, clients, or others as his practice will be significantly limited because of his health. A suspension less than six months is appropriate in this case, and therefore I would suspend Attorney Moodie's license for five months and 28 days, which really is six months.

¶31 This court ties its hands when it claims that Wisconsin precedent establishes a six-month suspension floor. In fact, in Casey, this court imposed a 60-day suspension for an attorney who misappropriated three client retainers rather than those funds going to his partners. 174 Wis. 2d at 342. Like this case, Attorney Casey stipulated to his wrongful conduct and the court agreed and suspended him for 60 days. Id. The referee in this case, however, felt constrained by the fact that this court has

not imposed discipline shorter than six months since Casey. The referee explained how Shea was distinguishable because the amount converted in Shea far exceeded that in the case at issue; unlike Attorney Moodie, Attorney Shea engaged in misconduct for years; and unlike Attorney Moodie, Attorney Shea justified and concealed the conversions by misrepresenting facts to the partners of his firm. See, e.g., Shea, 190 Wis. 2d at 561-62, 572.

¶32 We should not shirk our duty to carefully consider each matter independently, taking into account the gravity of Attorney Moodie's offense, its nature, implications on the legal profession, and the need to protect the public. Reasonable and appropriate discipline should be determined on a case-specific basis. What is necessary to protect the public from a part-time, limited solo practitioner who works primarily for friends and long-time clients? Does Attorney Moodie understand the gravity of his behavior and misconduct? Has he admitted to the wrongdoing, stipulated to the facts, cooperated fully, and has since seemingly done everything the right way? The answers to these questions and the evidence in this case should impact what is fair and appropriate. The six-month suspension imposed by this court could very well be the equivalent of two years and/or a revocation, given Attorney Moodie's age and health issues. Six months is too much; I would impose the equivalent of what the court says it is imposing as discipline, or five months and 28 days.

¶33 Just as I recently stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License

4

to Practice Law in Attorney Disciplinary Proceedings, we should say what we mean and mean what we say. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting). We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. When this court ties its own hands by instead of providing individualized consideration for a disciplinary matter, setting a mandatory minimum six-month suspension (which amounts to far more, perhaps four times that length), the court abdicates its responsibility.

¶34  For the foregoing reasons, I dissent.

¶35  I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this dissent.