# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2022AP1213-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Thomas W. Batterman, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>          Complainant,<br>     v.<br>Thomas W. Batterman,<br>          Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST BATTERMAN

| | |
|---|---|
| OPINION FILED: | February 24, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

JUSTICES:
Per curiam. ZIEGLER, C.J., filed a concurring opinion in which REBECCA GRASSL BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2022AP1213-D

STATE OF WISCONSIN       :       IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against**

**Thomas W. Batterman, Attorney at Law:**

**FILED**

**Office of Lawyer Regulation,**

      **Complainant,**

**FEB 24, 2023**

      **v.**

Sheila T. Reiff
Clerk of Supreme Court

**Thomas W. Batterman,**

      **Respondent.**

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1    PER CURIAM. Attorney Thomas W. Batterman has filed a petition for the consensual revocation of his license to practice law in Wisconsin pursuant to Supreme Court Rule (SCR) 22.19.[1] In his petition, Attorney Batterman states that he

---

[1] SCR 22.19 provides:

cannot successfully defend against the allegations of misconduct in connection with a grievance investigated by the Office of Lawyer Regulation (OLR).

¶2 Attorney Batterman was admitted to practice law in Wisconsin in 1982. His license is currently active and in good standing. He has not practiced law since 1985, does not

---

(1) An attorney who is subject of an investigation for possible misconduct or the respondent in a proceeding may file with the supreme court a petition for the revocation by consent [of] his or her license to practice law.

(2) The petition shall state that the petitioner cannot successfully defend against the allegations of misconduct.

(3) If a complaint has not been filed, the petition shall be filed in the supreme court and shall include the director's summary of the misconduct allegations being investigated. Within 20 days after the date of filing of the petition, the director shall file in the supreme court a recommendation on the petition. Upon a showing of good cause, the supreme court may extend the time for filing a recommendation.

(4) If a complaint has been filed, the petition shall be filed in the supreme court and served on the director and on the referee to whom the proceeding has been assigned. Within 20 days after the filing of the petition, the director shall file in the supreme court a response in support of or in opposition to the petition and serve a copy on the referee. Upon a showing of good cause, the supreme court may extend the time for filing a response. The referee shall file a report and recommendation on the petition in the supreme court within 30 days after receipt of the director's response.

(5) The supreme court shall grant the petition and revoke the petitioner's license to practice law or deny the petition and remand the matter to the director or to the referee for further proceedings.

2

maintain a law office and has no clients, and has no intention to practice law in the future. He has no previous disciplinary history.

¶3 On July 19, 2022, OLR filed a complaint against Attorney Batterman alleging four counts of misconduct. The first two counts of misconduct arose out of Attorney Batterman's representation of J.G.

¶4 Attorney Batterman is the founder, registered agent, and principal of Financial Fiduciaries and the president and majority shareholder of WTC, Inc. (WTC), the sole member of Financial Fiduciaries. In April 1988, J.G. established and funded a revocable living trust which provided that if J.G.'s wife should predecease him, the assets remaining in the trust, together with any assets received into the trust, shall be distributed to the following charities: 25% to the Diocese of the Catholic Church for Superior, Wisconsin, for educational purposes; 25% to Bruce High School, Bruce, Wisconsin, to fund scholarships for students pursuing a college education; 25% to the Alzheimer's Association for research; and 25% to the American Cancer Society for research.

¶5 In March 2011, J.G. amended the trust to provide that the bequest to the American Cancer Society be paid through local fundraising events such as Relay for Life in a manner and for such purposes as the organization saw fit. The amendment also changed the successor trustee from Vigil Asset Management Group, Inc. to Vigil Trust and Financial Advocacy of Wausau, Wisconsin, or its successors (Vigil).

¶6  WTC was the entity that provided investment management services to Vigil's trust clients.  Vigil was a registered tradename for Investors Independent Trust Company (IITC). Attorney Batterman did not have an ownership interest in IITC and was neither an employee nor an officer of IITC.

¶7  A trust services agreement between WTC and IITC permitted employees of WTC and Financial Fiduciaries to assist IITC with ministerial duties in the administration of trusts in which Vigil is to be named trustee.

¶8  J.G. died on December 27, 2014.  At that time, the trust was required to distribute 25% of the trust assets to each of the four beneficiaries.  Vigil was the trustee.

¶9  In February of 2015, Attorney Batterman discussed the administration of the trust with his then-fiancé, D.R., who was the senior manager for the Relay for Life division of the American Cancer Society.  Attorney Batterman and D.R. discussed an incremental distribution to the American Cancer Society over a period of up to ten years and discussed splitting the gift between the Eagle River and Wausau Relay for Life.

¶10  The unambiguous language of the trust stated that 25% of trust assets shall be distributed to the American Cancer Society.  There was no provision in the trust which provided for incremental distribution.  In a May 20, 2015 email to the American Cancer Society, Attorney Batterman offered only incremental distribution of trust assets.  Attorney Batterman told the American Cancer Society that Vigil was his company, although he had no ownership interest in it.  In a June 15, 2015

4

letter to the American Cancer Society, Attorney Batterman said the trust was discretionary, when he knew it was an irrevocable trust.  In the letter, Attorney Batterman said that the donor wished to remain anonymous, which was also not true.

¶11  The trust provided that after J.G.'s death, 25% of trust proceeds be distributed to Bruce High School.  Instead, Vigil hired a law firm to create the J.G. Scholarship Trust.  Attorney Batterman was the primary contact person with the law firm.  The scholarship trust was created without notice to Bruce High School.  The scholarship trust named Vigil as the trustee, and Attorney Batterman was named trust protector.  As trust protector, Batterman should have informed Bruce High School of its status as beneficiary to the trust.  In a July 9, 2015 email to the high school, Attorney Batterman failed to inform the high school that the trust was required to distribute 25% of the trust assets to the school.  Attorney Batterman also failed to inform the school that Vigil was the trustee and Attorney Batterman was the trust protector.

¶12  In late June or early July of 2015, the Alzheimer's Association Major Gifts Division made contact with Attorney Batterman because the Alzheimer's Association had received information of its status as a beneficiary of a trust for which Vigil was the trustee.  Attorney Batterman sent an email to the Alzheimer's Association Trust and Estate Specialist on July 6, 2015 saying he was "just going to begin the process of trying to get in touch with the local Alzheimer's office."  Prior to that date, neither Vigil nor Attorney Batterman had notified the

5

Alzheimer's Association of its status as a beneficiary, as was the trustee's duty. In the same email, Attorney Batterman identified the trust as revocable when he knew that the trust was irrevocable. Attorney Batterman knew the trust required distribution of 25% of the trust assets to each of the four named fiduciaries.

¶13 In July 2015, over six months after J.G.'s death, Attorney Batterman first notified the Superior, Wisconsin Diocese of the Catholic Church of its status as a beneficiary under the trust.

¶14 In September and October of 2015, the American Cancer Society, the School District of Bruce, the Superior, Wisconsin Diocese of the Catholic Church, and the Alzheimer's Association all filed petitions for the removal of the trustee in the matter of the J.G. Revocable Trust filed in Marathon County Circuit Court. In its petition, the American Cancer Society alleged that Attorney Batterman concocted a plan to distribute funds over a ten year period, rather than make an outright gift to the American Cancer Society as required by the trust instrument. Through this plan Attorney Batterman would reap the benefit of long-term trustee and investment fees paid from the trust, while his fiancé, an American Cancer Society employee responsible for implementing the local Relay for Life events, would benefit from enhanced opportunities for salary increases through the trust's stepped-up annual gifting.

¶15 Bruce High School alleged that Attorney Batterman failed to notify the school it was entitled to a one-time

6

distribution of its 25% share, and instead Vigil created a scholarship trust. Bruce High School also alleged that Attorney Batterman failed to notify the school that Vigil was the trustee and Attorney Batterman was the trust protector.

¶16 Attorney Batterman filed a responsive affidavit addressing the four petitions requesting removal of the trustee. On October 23, 2015, the circuit court granted the petitioners' requests for removal of the trustee and appointed Attorney Terrance Byrn as the new successor trustee.

¶17 On March 1, 2017, Attorney Batterman was deposed in the trust matter. In his sworn deposition testimony, he acknowledged that J.G. never indicated he wanted his gifts to be anonymous. Attorney Batterman also admitted that while he stated to the American Cancer Society that the trust was a discretionary trust, Vigil in fact had no discretion over the trust.

¶18 A court trial was conducted in the trust case on April 27 and May 23, 2017. On September 18, 2017, the circuit court determined:

> Vigil owes each beneficiary a duty to inform and report. Breach of this duty constitutes a breach of trust. From the testimony, the Court cannot help but find Mr. Batterman, slash, Vigil failed to provide the necessary information to several of the beneficiaries regarding the gift in a timely manner and upon request in which many ways has resulted in this extensive and arguably unnecessary litigation...
>
> This Court finds that the manner in which Vigil failed to give the appropriate notice to the American Cancer Association and the manner in which the gift was set up for distribution not authorized within the trust

7

document, often providing incomplete information and by setting up unilaterally disposition - - or distribution plans which arguably favor Vigil's constant breach of loyalty and duty to inform and report.

¶19 Following the circuit court's decision, significant litigation ensued regarding payment of attorney's fees. In a March 19, 2018 oral ruling, the circuit court ordered that Attorney Batterman and Vigil shall be jointly and severally liable for attorney's fees. Attorney Batterman and Midwest Trust Company, the successor in interest to IITC, filed a notice of appeal. In January 2019, the appeal was voluntarily dismissed.

¶20 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Batterman's handling of the J.G. Trust:

> **Count 1:** By engaging in conduct that amounted to a breach of trust in *In the Matter of the [J.G.] Revocable Trust*, Attorney Batterman violated SCR 20:8.4 (c). [2]

> **Count 2:** By misrepresenting to ACS that the trust donor wished to remain anonymous and that the funds came from a discretionary trust, Attorney Batterman violated SCR 20:8.4 (c).

¶21 The OLR's complaint also alleged that the American Cancer Society filed a complaint with the Securities Exchange Commission (SEC) against Financial Fiduciaries and Attorney Batterman. The SEC investigated the complaint. In a March 5,

---

[2] SCR 20:8.4 (c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

2018 order, the SEC found that Attorney Batterman caused Financial Fiduciaries' violations of various sections of the Advisers Act, which prohibits an investment advisor from engaging in a transaction, practice, or course of business which operates as a fraud or deceit upon a client or a prospective client and requires an advisor to take enumerated steps to safeguard client assets over which it has custody. In addition, the SEC found that Attorney Batterman willfully made untrue statements of material fact in a registration application or report filed with the Commission or willfully omitted to state material facts. The SEC ordered Financial Fiduciaries to pay a civil money penalty in the amount of $40,000, and it ordered Attorney Batterman to pay a civil money penalty in the amount of $20,000.

¶22 The OLR's complaint alleged the following count of misconduct with respect to the SEC proceeding:

> **Count 3:** By causing Financial Fiduciaries' violations of Sections 206(2), 206(4) and 207 of the Advisors Act in *In the Matter of Financial Fiduciaries, LLC and Thomas Batterman*, SEC Administrative Proceeding File No. 3-18385, Attorney Batterman violated SCR 20:8.4 (c).

¶23 Finally, the OLR's complaint alleged that on April 10, 2018, Attorney Batterman was pulled over while operating his vehicle at 46 miles per hour in a 35 mile per hour zone. During the traffic stop, the officer detected a strong odor of intoxicants coming from Attorney Batterman, as well as glassy eyes and slurred speech. The officer detected some impairment in field sobriety tests and requested Attorney Batterman to

9

submit to a preliminary breath test, which Attorney Batterman declined. Based on the field sobriety tests, Attorney Batterman was placed under arrest for Operating While Intoxicated, 2nd offense. Attorney Batterman subsequently submitted to a blood draw showing a blood alcohol content of .124, in excess of the legal limit in Wisconsin.

¶24 On October 19, 2021, a jury found Attorney Batterman guilty of Operating with a Prohibited Alcohol Concentration, 2nd offense. He was sentenced to 15 days confinement in the Marathon County jail, 13 months driver's license revocation and, 12 months ignition interlock. Attorney Batterman appealed, and his sentence has been stayed pending appeal.

¶25 The OLR's complaint alleged the following count of misconduct with respect to the OWI conviction:

> **Count 4:** By engaging in conduct leading to a criminal Conviction of Operating with a PAC 2nd offense in *State of Wisconsin v. Thomas Batterman,* Marathon County Case No. 2018CM752, Attorney Batterman violated SCR 20:8.4 (b). [3]

¶26 Attorney Batterman filed his petition for revocation by consent on December 8, 2022. The petition alleges that Attorney Batterman cannot successfully defend himself against the professional misconduct alleged in the complaint. The petition states Attorney Batterman has been represented by counsel in the matter and is freely, voluntarily, and knowingly

---

[3] SCR 20:8.4 (b) provides: "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

filing his petition for revocation by consent. Attorney Batterman further states that by filing the petition he understands he is giving up his right to further contest each misconduct allegation in the complaint.

¶27 The OLR filed a memorandum recommending that Attorney Batterman's petition for revocation by consent be granted and that his Wisconsin law license be revoked.

¶28 Having reviewed Attorney Batterman's petition for consensual revocation and OLR's recommendation on the petition, we grant Attorney Batterman's petition for the revocation of his license to practice law in Wisconsin. In the trust proceeding, Attorney Batterman engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. The SEC found that he engaged in conduct which operated as a fraud or deceit upon a client.

¶29 The seriousness of Attorney Batterman's misconduct demonstrates that it is appropriate to revoke his law license in order to protect the public, the courts, and the legal system from repetition of his misconduct; to impress upon him the seriousness of his misconduct; and to deter other attorneys from engaging in similar misconduct. This court has previously revoked attorneys' licenses when they face multiple counts of misconduct, including misconduct consisting of dishonesty, fraud, deceit or misrepresentation. See, e.g., In re Disciplinary Proceedings against Vaitys, 2019 WI 85, 388 Wis. 2d 259, 932 N.W. 2d 400.

11

¶30 Since this matter was resolved without the need to appoint a referee, we assess no costs against Attorney Batterman.

¶31 IT IS ORDERED that the petition for consensual license revocation is granted.

¶32 IT IS FURTHER ORDERED that the license of Thomas W. Batterman to practice law in Wisconsin is revoked, effective the date of this order.

¶33 IT IS FURTHER ORDERED that Thomas W. Batterman shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶34 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I concur in the court's order revoking Attorney Batterman's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. See SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. See In re Disciplinary Proceedings Against Moodie, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶35 I am authorized to state that Justices REBECCA GRASSL BRADLEY, BRIAN HAGEDORN, and JILL J. KAROFSKY join this concurrence.

1