# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2022AP41-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against John O. Ifediora, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>   v.<br>John O. Ifediora,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST IFEDIORA

| | |
|---|---|
| OPINION FILED: | January 26, 2024 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |

Per curiam.

| | |
|---|---|
| ATTORNEYS: | |

**2024 WI 7**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2022AP41-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against John O. Ifediora, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**John O. Ifediora,**

      **Respondent.**

**FILED**

**JAN 26, 2024**

Samuel A. Christensen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. We review the recommendation of Referee James D. Friedman that the license of Attorney John O. Ifediora to practice law in Wisconsin be revoked due to professional misconduct. The referee also recommends that Attorney Ifediora pay the full costs of this proceeding, which are $12,305.23 as of July 12, 2023. Although Attorney Ifediora initially filed a notice of appeal of the referee's decision, he voluntarily dismissed the appeal before any briefs were filed. Therefore,

our review of the referee's recommendation proceeds pursuant to Supreme Court Rule (SCR) 22.17(2).[1]

¶2    Upon careful review of the matter, we adopt the referee's findings of fact and conclusions of law and agree that the seriousness of Attorney Ifediora's professional misconduct warrants the revocation of his license to practice law. We further agree that he should pay the full costs of this proceeding.

¶3    Attorney Ifediora is a naturalized American citizen who was born in Nigeria. He was admitted to practice law in Wisconsin in 2003. He is a retired professor of economics at the University of Wisconsin-Platteville. For some years, Attorney Ifediora maintained a law office in Madison. His license to practice law has been suspended since 2016 for failure to comply with continuing legal education requirements, failure to pay State Bar dues, and non-compliance with trust account certification requirements. Attorney Ifediora currently resides in Virginia. He has no previous disciplinary record.

¶4    On January 10, 2022, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Ifediora alleging twelve counts of misconduct. All counts arose out of Attorney Ifediora's representation of his first cousin, O.A., a Nigerian

---

[1] SCR 22.17(2) provides: "If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter."

citizen, who sought Attorney Ifediora's assistance in becoming a permanent resident in the United States. At that time, Attorney Ifediora was employed as an economics professor at UW-Platteville. Attorney Ifediora told OLR that he had retired from the practice of law but wanted to assist O.A. in becoming a permanent U.S. resident merely on a "familial basis."

¶5 In pursuit of accomplishing O.A.'s goal of becoming a permanent U.S. resident, Attorney Ifediora referred O.A. to the Immigrant Investor Program, which is also known as the "EB-5" Program, administered by the U.S. Citizenship and Immigration Services (USCIS). Under this program, a person who invests $500,000 in a new commercial enterprise that creates ten or more permanent full-time jobs will have a path to permanent residency in the United States. The investment may be either a direct investment in a business or an indirect investment in a USCIS-designated "EB-5 regional center."

¶6 Attorney Ifediora became aware of a startup pharmaceutical manufacturer in Madison, Wisconsin called U.S. Foods and Pharmaceuticals (USFP). USFP had been working with a USCIS-approved EB-5 regional center in Detroit, Michigan called the Detroit Immigrant Investor Regional Center (DIIRC). Attorney Ifediora contacted representatives of both USFP and DIIRC and told them that he had a potential investor. In addition, Attorney Ifediora contacted an immigration lawyer, Attorney Ebere Ekechukwu, to facilitate the filing of the associated I-526 Petition necessary to establish eligibility for the EB-5 program.

3

¶7 In October 2014 Attorney Ifediora advised O.A. to invest $500,000 with USFP, working in conjunction with DIIRC, as part of an EB-5 petition. Attorney Ifediora also advised O.A. that in addition to the $500,000 investment, the DIIRC charged a nonrefundable $57,000 processing fee. Attorney Ifediora coordinated with representatives of USFP and DIIRC, as well as Attorney Ekechukwu, to obtain all necessary documents to start the EB-5 petition process.

¶8 In an August 22, 2014 email to O.A., Attorney Ifediora said, "As your attorney in your pending transactions, I would advise that funds for the purchase of property be sent to my law office Trust Account from where the funds would be used for your intended investment."

¶9 In a September 29, 2014 letter to Attorney Ekechukwu, written on his Madison office letterhead, Attorney Ifediora said, "I am enclosing in this letter a retainer and part of the agreed upon fee for your legal service. The rest shall be remitted with the filing fee as the process moves along. I will facilitate things from my end, and shall keep you updated."

¶10 Attorney Ifediora obtained O.A.'s signature on a Subscription Agreement and Power of Attorney authorizing the investment in USFP. Pursuant to the Subscription Agreement, O.A. agreed to pay "$500,000 plus a processing fee of $57,000, which shall be payable as follows: (i) $557,000 shall be payable in cash/check or wire concurrently with delivery of this Agreement."

4

¶11 Following Attorney Ifediora's advice, O.A. sent Attorney Ifediora two checks, one in the amount of $50,000 payable to "Ifediora Law Office" to cover the processing fee for DIIRC, and one in the amount of $500,000 made payable to "US Foods and Pharmaceuticals."

¶12 Attorney Ifediora also held himself out as O.A.'s legal representative to R.V., the managing member of USFP. R.V. testified in subsequent federal litigation over the failed EB-5 petition that Attorney Ifediora was "the agent of [O.A.]" and that "we trusted [Attorney Ifediora] to represent not only [O.A.] but also USFP in the cause of getting this petition approved and bringing in additional investment into the company."

¶13 Attorney Ifediora's actions on behalf of O.A. during the EB-5 petition process demonstrated that Attorney Ifediora was acting as O.A.'s attorney. Attorney Ifediora expressly said he was O.A.'s attorney. Attorney Ifediora gave specific legal advice to O.A. and represented to third parties that he was O.A.'s agent or representative. Attorney Ifediora handled significant client funds in connection with the representation. On October 20, 2014, Attorney Ifediora deposited the funds he received from O.A. into his law firm's operating account, rather than into a trust account. Attorney Ifediora communicated with multiple individuals on behalf of O.A. using email and office letterhead containing his law office address and website.

¶14 Attorney Ifediora did not notify DIIRC, the intended beneficiary of the funds, in writing that he had received

5

$50,000 in client funds associated with DIIRC's processing fee, nor did he promptly deliver to DIIRC the processing fee agreed to in the Subscription Agreement.

¶15 After depositing the $50,000 in processing fees into his law firm operating account, Attorney Ifediora transferred those proceeds into other bank accounts he owned. He subsequently converted the entire $50,000 for his personal use, leaving his law firm operating account with a balance under $200.

¶16 Attorney Ifediora failed to provide O.A. and DIIRC an accounting of the final distribution of the $50,000. Those funds should have been held in trust for O.A. and DIIRC.

¶17 In November 2014 O.A.'s $500,000 payment was deposited in a USFP checking account at Wells Fargo Business Bank in Madison, Wisconsin. Wells Fargo sent USFP written confirmation of the deposit.

¶18 On November 10, 2014, R.V. wrote a check in the amount of $200,000 from the Wells Fargo account to "John Ifediora Law Firm." R.V. said the purpose of the check was to repay a loan Attorney Ifediora purportedly made to O.A. in the amount of $200,000 as part of the initial $500,000 EB-5 petition. R.V. testified in the subsequent federal litigation that Attorney Ifediora promised the $200,000 payment would be placed in an escrow account.

¶19 Attorney Ifediora deposited the $200,000 into his business account, rather than in an escrow account as he had

6

promised. He did not notify O.A. that he had received the $200,000 associated with the EB-5 petition from USFP.

¶20 Attorney Ifediora transferred the funds into bank accounts he owned. He made two payments totaling $10,600 to Attorney Ekechukwu toward her legal fees related to the EB-5 petition. Attorney Ifediora subsequently converted nearly $190,000 for his own personal purposes, including paying himself more than $121,000 over a three-year period. He failed to provide an accounting to O.A. of the $200,000 after distributing the funds.

¶21 In November 2017 USCIS informed Attorney Ifediora and USFP that it intended to deny the Form I-526 that had been filed on behalf of O.A.

¶22 Attorney Ifediora continued to represent O.A. by coordinating with R.V. and Attorney Ekechukwu on how to respond to the USCIS Notice of Intent to Deny, despite the fact that his Wisconsin law license had been administratively suspended in 2016.

¶23 In January 2018 USCIS denied O.A.'s I-526 petition. O.A. informed Attorney Ifediora that he wanted to discontinue all further efforts on the EB-5 petition, and he asked Attorney Ifediora to refund the funds he had set aside for the investment. Attorney Ifediora failed to respond to O.A.'s request and failed to surrender any property belonging to O.A.

¶24 In May 2018 Attorney Ifediora received a $6,000 interest payment from USFP for the money O.A. had invested with

7

them. Attorney Ifediora failed to notify O.A. of his receipt of the funds and subsequently converted them for his personal use.

¶25 O.A. initiated a federal civil lawsuit in United States District Court for the Western District of Wisconsin against Attorney Ifediora, USFP, and others, seeking the refund of all of his investment money. Attorney Ifediora subsequently reached a settlement with all parties. The terms of the settlement are confidential, but OLR states that it believes that all funds, including the $50,000 processing fee, the $200,000 in funds received from USFP, and the $6,000 interest payment, have been repaid pursuant to the settlement. As a result, OLR is not seeking restitution.

¶26 In January 2020 O.A. filed a grievance against Attorney Ifediora with OLR. In response, Attorney Ifediora claimed he did not act as O.A.'s attorney, stating, "I never provided any legal services to [O.A.]"

¶27 OLR's complaint alleged the following counts of misconduct with respect to Attorney Ifediora's representation of O.A.:

> Count one: By failing to place in trust the $50,000 associated with the DIIRC processing fee, [Attorney] Ifediora violated former SCR 20:1.15(b)(4).[2]

---

[2] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct that involved Attorney Ifediora's handling of client funds arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court trust account rules will be those in effect prior to July 1, 2016.

Count two: By failing to provide notice to DIIRC of his receipt of $50,000 associated with the DIIRC processing fee, [Attorney] Ifediora violated former SCR 20:1.15(d)(1).[3]

Count three: By failing to provide an accounting of the $50,000 associated with the DIIRC processing fee after distributing the funds, [Attorney] Ifediora violated former SCR 20:1.15(d)(2).[4]

Count four: By converting the $50,000 associated with the DIIRC processing fee, [Attorney] Ifediora violated SCR 20:8.4(c).[5]

Count five: By failing to place in trust $200,000 in client funds associated with [O.A.'s] EB-5 petition, [Attorney] Ifediora violated former SCR 20:1.15(b)(4).

---

Former SCR 20:1.15(b)(4) provided: "Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred."

[3] Former SCR 20:1.15(d)(1) provided: "Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[4] Former SCR 20:1.15(d)(2) provided: "Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property."

[5] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

9

Count six: By failing to provide an accounting of the $200,000 in funds associated with [O.A.'s] EB-5 petition after distributing those funds, [Attorney] Ifediora violated former SCR 20:1.15(d)(2).

Count seven: By converting $200,000 in funds associated with [O.A.'s] EB-5 petition, [Attorney] Ifediora violated SCR 20:8.4(c).

Count eight: By failing to place in trust $6,000 in interest received in connection with [O.A.'s] EB-5 petition, [Attorney] Ifediora violated former SCR 20:1.15(b)(4).

Count nine: By failing to provide notice to [O.A.] of the receipt of $6,000 in interest received in connection with O.A.'s EB-5 petition, [Attorney] Ifediora violated former SCR 20:1.15(d)(1).

Count ten: By failing to provide an accounting of the $6,000 in interest he received in connection with [O.A.]'s EB-5 petition after distributing the funds, [Attorney] Ifediora violated former SCR 20:1.15(d)(2).

Count eleven: By converting the $6,000 in funds in interest he received in connection with [O.A.'s] EB-5 petition, [Attorney] Ifediora violated SCR 20:8.4(c).

Count twelve: By engaging in the practice of law or otherwise acting in a manner purporting to be authorized or qualified to practice law while his law license was suspended, [Attorney] Ifediora violated

SCR 10.03(4)(a),[6] as enforced via SCR 20:8.4(f)[7] and SCR 23.02(1).[8]

¶28 The referee was appointed on February 17, 2022. An evidentiary hearing was held before the referee in March 2023. The referee issued his report and recommendation on June 22, 2023. The referee found that OLR had met its burden of proof as to all of the counts of misconduct alleged in the complaint. The referee agreed with OLR that revocation of Attorney Ifediora's license to practice law would be an appropriate sanction for his misconduct. The referee also agreed that Attorney Ifediora should bear the full costs of this proceeding.

¶29 The referee found numerous aspects of Attorney Ifediora's testimony at the evidentiary hearing to be incredible. For example, while Attorney Ifediora claimed that he was merely acting as O.A.'s agent and not as his attorney,

---

[6] SCR 10.03(4)(a) provides: "No individual other than an enrolled active member of the state bar may practice law in this state or in any manner purported to be authorized or qualified to practice law provided however, that an inactive or emeritus member may provide pro bono legal services consistent with SCR 10.03(3)(am)."

[7] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[8] SCR 23.02(1) provides: "A person who is duly licensed to practice law in this state by the Wisconsin Supreme Court and who is an active member of the State Bar of Wisconsin may practice law in Wisconsin. No person may engage in the practice of law in Wisconsin, or attempt to do so, or make a representation that he or she is authorized to do so, unless the person is currently licensed to practice law in Wisconsin by the Wisconsin Supreme Court and is an active member of the State Bar of Wisconsin."

11

the referee noted that in emails that Attorney Ifediora sent to O.A., he expressly said he <u>was</u> acting as O.A.'s lawyer. The referee also found that Attorney Ifediora represented to third parties that he was O.A.'s attorney.

¶30 In addition, the referee said that Attorney Ifediora's actions clearly indicated he was acting on behalf of O.A. as his lawyer. The referee said, "The EB-5 program is not for the faint of heart. It is extremely complicated and difficult. [Attorney] Ifediora had no immigration law experience and no familiarity with this program and yet he tried to lead someone through it——that is primarily what caused [O.A.'s] losses here." The referee also said:

> In addition to representing [O.A.] in a complicated immigration process in which he had no experience, his response to a question of why he maintained a law office is equally troubling:
>
> "Well, you know, it's--it's the exuberance and the idea to have a law degree and I don't know. It was -- it was a very exciting prospect. And of course, at the point in time, I also wanted to provide services to Wisconsin inmates and so the idea of having -- of having a law -- a law practice was appealing, even though I knew deep down I wouldn't have the time to do that.["] Clearly, he liked to show the badge of being a lawyer.

¶31 The referee had no difficulty concluding that Attorney Ifediora mishandled and converted over $250,000 of O.A.'s funds. The referee noted that client money that was intended to be paid to a third party was required to be placed into a trust account, but Attorney Ifediora did not have a trust account. The referee commented on "the ease with which [Attorney] Ifediora lied to

12

this Referee about not paying himself out of [O.A.'s] $50,000 for his services." The referee found that Attorney Ifediora failed to notify O.A. that he had received $200,000 of O.A.'s money from USFP, and he failed to provide O.A. with an accounting of the $200,000 after he had distributed those funds. The referee found that Attorney Ifediora converted the $200,000 when he spent it on a conference he put on in Africa. Similarly, the referee found that Attorney Ifediora converted the $6,000 interest payment to his personal use and never provided O.A. with an accounting.

¶32 The referee also found that Attorney Ifediora practiced law after his license had been administratively suspended. The referee noted that throughout 2017 and into 2018, Attorney Ifediora was still using his law office letterhead in communications with O.A.

¶33 The referee found that O.A. "relied on [Attorney] Ifediora's advice and entrusted him to hold and allocate substantial funds according to that required by the Subscription Agreement with USFP. Instead, [Attorney] Ifediora proceeded to convert [O.A.'s] funds, which ultimately resulted in [O.A.] suing [Attorney] Ifediora [and others] in federal court, resulting in a confidential settlement." Based on these findings, the referee recommended that Attorney Ifediora's license to practice law in Wisconsin be revoked and that he be assessed the full costs of this proceeding.

¶34 We will affirm a referee's findings of fact unless they are found to be clearly erroneous. We review a referee's

13

conclusions of law de novo. See In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶35 Based upon our review of the record, we accept the referee's findings of fact and conclusions of law. We agree that the seriousness of Attorney Ifediora's misconduct warrants the revocation of his license to practice law. Conversion of client funds is a very serious offense, and we have frequently revoked attorneys' licenses in similar cases. For example, in In re Disciplinary Proceedings Against Runyon, 2020 WI 74, 393 Wis. 2d 612, 948 N.W.2d 62, we revoked the license of an attorney who converted over $135,000. In In re Disciplinary Proceedings Against Sweeney, 2019 WI 13, 385 Wis. 2d 407, 922 N.W.2d 850, we found it appropriate to revoke the license of an attorney who converted more than $420,000. Attorney Ifediora's misconduct is readily comparable to that of Runyon and Sweeney. The seriousness of that misconduct demonstrates that his license to practice law must be revoked to protect the public, courts, and the legal system from the repetition of the misconduct; to impress upon Attorney Ifediora the seriousness of his misconduct; and to deter other attorneys from engaging in similar misconduct. As is our usual custom, we further agree with the referee's recommendation that Attorney Ifediora pay the full costs of this proceeding.

14

¶36 IT IS ORDERED that the license of John O. Ifediora to practice law in Wisconsin is revoked, effective the date of this order.

¶37 IT IS FURTHER ORDERED that within 60 days of the date of this order John O. Ifediora pay to the Office of Lawyer Regulation the costs of this disciplinary proceeding, which are $12,305.23 as of July 12, 2023.

¶38 IT IS FURTHER ORDERED that, to the extent he has not already done so, John O. Ifediora comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law has been revoked.

¶39 IT IS FURTHER ORDERED that the administrative suspensions of John O. Ifediora to practice law in Wisconsin, due to non-compliance with continuing legal education requirements, failure to pay bar dues, and non-compliance with trust certification requirements, will remain in effect until each reason for the administrative suspension has been rectified, pursuant to SCR 22.28(1).

¶40 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I concur in the court's order revoking Attorney Ifediora's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for readmittance after a period of five years. See SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. See In re Disciplinary Proceedings Against Moodie, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶41 I am authorized to state that Justices REBECCA GRASSL BRADLEY, BRIAN HAGEDORN, and JILL J. KAROFSKY join this concurrence.

1